C. H. Jones & Brother, Appellants, vs. J. C. Greeley, Appellee.

1. The law in libel, as held by this court, being that to publish of and concerning a person any language which tends to bring him into ill repute, or to destroy the confidence of his neighbors in his integrity, is libellous and actionable *per se*, printed and published words which clearly imply that a person is a hypocrite, and under the cloak of hypocrisy oppresses widows and orphans, is so actionable.

2. A plea in libel justifying one of several charges is good as going to mitigation of damages ; but the part justified must be distinct and severable from the rest, and must be the precise charge and the whole of the precise charge.

3. A charge which authorizes the jury to determine whether the language set forth in the declaration has a defamatory meaning, is not erroneous as confining them to that language when they are told that their determination must be founded on their belief from the evidence, there being other evidence than the language of the declaration.

4. It was not error to charge the jury that they might take into consideration the financial ability of the defendants, and that if they believed "the defendants actually intended to injure the plaintiff by the publication, they must award heavier damages than if no actual intention existed"—such intention going to make aggravated damages, and to be distinguished from the intention which the law holds to be admitted by the plea of not guilty.

5. The jury being left on instructions at the request of defendants, to determine on the evidence whether the meaning of the language used, as assigned by the declaration, was the correct meaning, this court sees no sufficient reason to disturb their finding.

6. This court will not set aside the verdict of $3,000 as excessive, considering the evidence as to the character, standing and business of the plaintiff, in connection with the injurious tendency of the libel and the wide circulation of the paper of defendants in which the publication was made. there being nothing to indicate that the jury was controlled in the amount of its verdict by any improper influences or prejudices, and the amount not appearing to be grossly excessive.

7. If the Judge fails to sign and seal his ruling on charges asked by counsel, as required by statute, but no exception was taken on that account below, the objection is not available here.

Appeal from the Circuit Court for Duval County.

The facts of the case are stated in the opinion of the court.

*Hartridge & Young, Randall, Walkers & Foster* for Appellants.

*H. Bisbee, R. B. Archibald* for Appellee.

BRIEF OF HARTRIDGE & YOUNG, COUNSEL FOR APPELLANTS.

This was an action for libel brought by J. C. Greeley against the defendants, which was tried in the court below on the issue of not guilty, and a verdict was rendered against defendants for $3,000.00 and a judgment was entered on the verdict. There was a plea of justification which was demurred to and the demurrer was sustained. A demurrer was sustained to the third count in the declaration.

The first assignment of error is the sustaining of the demurrer to the defendants' plea filed on December 6th, 1886. One of the charges complained of is that defendants published of and concerning the plaintiff that " he was a grasping and penurious grad-grind whose greed had inflicted untold sorrows upon the widow and orphan." The plea undertakes to justify this charge but not the other alleged charges. It is competent for the defendant to justify one of several charges contained in a libellous publication without justifying the other charges, and if his plea is substantially proven the plaintiff would be entitled to a verdict on the charges not justified, but the charges justified and proven would go in mitigation of damages. Olger on Libel and Slander, 486.

The court erred in not allowing defendants the benefit of this plea.

The second error assigned is giving in the instructions to the jury, the last paragraph of the first charge asked by the plaintiff. The portions of this charge preceding the portion of the charge excepted to, correctly and fully announces the law of libel, and the paragraph excepted to, following this full and correct exposition of the law, and singling out certain words used in the declaration, was calculated to mislead the jury into the belief that the court was charging them that

the defendants had made these charges against the plain ff and judging from the result it must have mislead the jury. A charge, or portion of a charge, which asserts a correct legal proposition, but is given in such connection as to probably mislead the jury, is erroneous. Franz vs. Sore, 89 Ill., 590 ; Newcomb vs. Launtz, id., 144 ; Herrick vs. Gray, 65 Ill., 105 ; Levy vs. Cox, 22 Fla., 546.

The third error assigned is giving the third charge asked by the plaintiff. This charge is manifestly erroneous. It confined the jury, in determining whether the alleged libellous words and language had a defamatory meaning, to the " alleged libellous matter as set forth in the declaration," and did not leave them to determine whether or not the alleged libellous words and language, as the same was proven to have been published, by the alleged libellous article itself, which was offered in evidence by plaintiff, had a dafamatory meaning or not. The declaration had set forth a portion of the article published, and complained of the same as defamatory, and this charge confined the jury to a consideration of the part so selected, whereas the law required that they should consider the entire article and determine from consideration of the entire article, as published, whether or not the words and language complained of had a defamatory meaning. Odgers on Libel and Slander, 98, 27.

The fourth error assigned is giving the fourth charge asked by the plaintiff. This charge repeats the error committed in the third charge by confining the jury to a consideration of the words and language set forth in the declaration.

The fifth error is giving the last paragraph in the fifth charge asked by the plaintiff. The paragraph excepted to is erroneous in view of the fact that there was no conflict in the evidence, and there was not a particle of evidence offered to show " that the defendants did actually intend to injure

the plaintiff," yet the court charged the jury in the paragraph excepted to that "if you believe" (without regard to the evidence in the case) " that the defendants intended to injure plaintiff, then you must award heavier damages than you would award in case you find that they did not have such intention. The jury are left by the portion of the charge excepted to to act on their beliefs without regard to the evidence adduced in the case. This is palpable error.

" Where instructions to the jury do not accurately state the law as applicable to the facts in the case they should be refused." Levy vs. Cox, 22 Fla., 546 ; Tully vs. Excelsior Iron Works, Sup. Ct. of Ill., January 25th, 1886, (2 W. R.,) 854. .

Where instructions are variant, and there is nothing to show the jury which to adopt, an error in one will not be cured by another instruction. Ill. Simon Co. vs. Hough, 91 Ill., 63 ; Steinmeyer vs. People, 95 Ill., 383.

The sixth error assigned is the giving of the seventh charge asked by the plaintiff. By this charge the court instructed the jury that " the plea of not guilty in this case admits the matter of the alleged published article was false." The law as announced by this court in Jones, Varnum & Co. vs. Townsend's Adm'r, 21st Florida, 431, is that, "The plea of not guilty in an action for libel, the charge being actionable *per se*, admits that it is false in fact." We submit to the court that the article which had been introduced in evidence, stripped of the innuendo which plaintiff saw fit to attach to it, is not libellous *per se*. The court left it to the jury to determine whether or not the alleged libel bears the construction which the plaintiff in his declaration seeks to put on it, thereby holding that the article is not libellous *per se*. The court erred in charging the jury that the plea of not

guilty admits the matter of the alleged published article to be false.

In addition to the errors already pointed out in the third and fourth charges asked by plaintiff and given by the court, there is one common to both. The Judge wrote on each of these charges the word "given," but omitted to sign and seal the same as required by the statute. The defendants excepted to the giving of each of these charges. The fact of the charges not being signed and sealed was probably not known to the jury, and would not have made any difference in their verdict, but the Legislature in their wisdom have required this to be done, and it is error in the court not to comply with the requirements of the statute, and where the giving of the charge which is not signed and sealed as required by law is excepted to, the error is one which cannot be overlooked. The statute requires *all of the instructions*, as well those given as those denied, to be signed and sealed by the Judge. The Judge endorsed on each of the several charges excepted to, his ruling, but did not sign or seal any of them except the seventh.

The seventh error assigned is overruling the motion to set aside the verdict and grant a new trial.

There are five grounds set out in the motion for granting a new trial. The first is that the verdict is contrary to the evidence, the second that it is contrary to the law and the charge of the court, the fourth that the alleged libellous publication, when every part thereof is considered, is not libellous. We will consider all these together. There was no conflict in the evidence, and the jury were instructed by the court in the second charge asked by defendants, that they should especially consider the words as a whole and not dwell on isolated passages, but give their proper weight to every part ; and in the fourth charge asked by defendants, the court instructed the jury that where the meaning

of the defendants' words is clear, or has been ascertained, the question remains, Has he said enough ? Was the imputation sufficiently definite to injure the plaintiff's reputation ? Is it clear that it was to the plaintiff to whom he referred ? Unless these questions can be answered in the affirmative, no action lies. There must be a specific imputation cast upon the plaintiff or the jury must find for the defendants. Now the plaintiff offered no evidence, outside of the article published, to prove that the defendants meant "to publish and say of and concerning plaintiff that he is posing as a good man when as a matter of fact his conduct has been and is the reverse of a good man, that he is pretending to be a philanthropist when in fact he is a grasping and penurious grad-grind, whose greed has inflicted untold sorrow upon the widow and orphan ; that he is appearing before the public as one kind of man and that it is legitimate to strip off his mask and show the real countenance behind it ?" Now, when the entire article is considered, it is apparent that the words complained of are not charges made against Mr. Greeley. The article opens with an allusion to a previous article which had caused a libel suit to be instituted by plaintiff against defendants, and then proceeds to discuss the law of libel with reference to privileged communications, announcing the rule and then illustrating it. In the next sentence the article says : " And it is precisely this that has happened to Mr. Greeley." Precisely what ? Bear in mind that the whole article is called forth by a libel suit based on a former article, and it is plain, especially when we consider the caption of the article, "Fished Out of his Hole," that the writer meant to say and did say that in the previous article Mr. Greeley had been subjected to precisely the sort of criticism and exposure that the law declared to be privileged. The only charges and imputations in this article against Mr. Greeley follows

after this and are not complained of by the plaintiff. There is absolutely nothing to show that defendants made the charges against plaintiff complained of. The publication, when every part of it is considered, not being *libellous per se*, and no evidence being offered to prove its libellous character, the verdict is contrary to the evidence and contrary to the law and the charge of the court, and the court erred in refusing the motion to set aside and grant a new trial. Dongue vs. Gaffy, Sup. Ct. of Conn., Nov. 1886 ; S. F. & W. R'y Co. vs. Rice, Supreme Court of Florida, Nov. 12, 1887. Odgers on Libel and Slander, 111, 112 and 116; Pittsburgh, Alleghany and Manchester R. R. Co. vs. Mr. Curd, Supt. Ct. Penn., Feb., 1887, (6 Central Reporter, 719.)

The third ground of the motion is that the damages awarded are excessive. The plaintiff offered no evidence to show that he had been damaged, or that he had been injured in his trade, profession, calling or occupation by the alleged publication, or that he had been shunned or avoided by a solitary individual by reason thereof, or that the article had caused any person to t iink less of him than they did before. On the contrary the plaintiff put up a witness, J. M. Barrs, and proved by him that plaintiff " stands very high," not that he stood high before the publication of the article complained of, but that " he stands very high " at the time of the trial, months after the publication complained of. Yet the jury brought in a verdict for three thousand dollars. Such a verdict upon such evidence, or rather want of evidence, must have been the result of prejudice, or else the jury, following the instructions given in the last paragraph of the 5th charge, to which an exception was taken, believed, without any evidence to warrant their belief, and in spite of the declarations of defendants, in the article complained of that " we shall endeavor not to do him any injustice, and we are very far indeed from bearing him the least particle

of personal ill will," and in spite of the uncontradicted testimony of C. H. Jones as to what had called forth the article and the circumstances under which it was written that " the defendants did actually intend to injure the plaintiff by the publication of the alleged libelous article." It is excessive and should have been set aside by the court.

Punative damages are not recoverable without proof of express malice. Compensation for the injury done to the plaintiff's character is the measure of the plaintiff's damages unless express malice be proven. Nub vs. Hope, Sup. Ct. of Penn., Jan., 1886, (2 Cent. R., 71.), Odgers on Libel and Slander, 291, 292; Montgomery vs. Knox, Sup. Ct., Fla., Nov., 1887, (3 S. R., 217.)

Nominal damages must result from the proof of alleged libel without any evidence of actual damage. Donague vs. Chaffey, Sup. Court of Conn., Nov., 1385; In E Reptr., 267.

The fifth ground is that the court erred in giving the second, third, fourth, fifth, sixth, seventh and eighth charges asked by the plaintiff. None of these charges, except the seventh, were signed and sealed by the Judge. Having discussed the errors in the charges we will not repeat it here.

Maxwell, J : In the argument of counsel for appellants, some of the questions discussed are treated as if the case made by the first and second counts of the declaration was not a case of libel actionable *per se.* We think otherwise. The charge in both counts is that appellants published of appellee that " if he (meaning the plaintiff) is posing as a good man, when as a matter of fact, his conduct has been and is the reverse of what is supposed to befit the character of a good man, it is not only legitimate and proper, but it is a duty which a journalist owes to the people to strip off

the disguise and expose the sham. If he (meaning the plaintiff) is pretending to be a philanthropist and a benefactor of the poor, when in fact he has been a grasping and penurious Grad-grind, whose greed has inflicted untold sorrow upon the widow and the orphan, it is proper and right that that likewise should be exposed. If he (meaning the plaintiff) is appearing before the public with the pretence of being one kind of a man, it is legitimate to strip off his mask and show the real countenance behind it. It is perfectly understood that when a man becomes a candidate he challenges precisely this kind of scrutiny and renders himself liable to exactly this sort of exposure, and it is precisely this that has happened to Mr. Greeley—" meaning, as the declaration says, " that plaintiff is posing as a good man, when as a matter of fact his conduct has been and is the reverse of what is supposed to befit the character of a good man; and that he is pretending to be a philanthropist and benefactor of the poor, when in fact he has been a grasping and penurious Grad grind whose greed has inflicted untold sorrow upon the widow and orphan," &c. This court has held that to publish of and concerning any person any language which tends to bring him into ill repute, or to destroy the confidence of his neighbors in his integrity, is actionable *per se*. Montgomery vs. Knox, 23 Fla., 595. It is too apparent to require comment, that the language complained of was calculated to produce just such injury to appellee. It in effect brands him as a hypocrit, and as one who under the cloak of hypocrisy oppresses the widow and orphan. What worse could be said of him, short of imputing high crime? To be published as a hypocrite the authorities hold is actionable ; Townsend on Slander and Libel, section 177 ; Thorley vs. Kerry, 4 Taunton, 355 ; Maloney vs. Bartley, 3 Camp. N. P., 213; and when to that is added the stigma of such greed as impels him to inflict untold sorrow upon the most helpless

members of the community, the case becomes one of much stronger actionable character. And even if there were any doubt in regard to the actionable character of the publication, considering only its probable injury to him as an individual, which is the complaint of the first count, there can be none when the language is applied to him in his business character of banker and money-lender, as is alleged in the colloquium of the second count. So applied it is actionable *per se* in slander as well as libel, though without such application it would not be actionable in slander in the absence of special damage, while in libel it would be ; Townsend on Slander and Libel, sections 179-80; Sanderson vs. Caldwell, 45 N. Y., (6 Hand) 398 ; and as pertinent to this case, the language of one member of the court in Stone vs. Cooper, 2 Delio, 300, where, though it was held that to publish of a person that he used money for shaving purposes was not necessarily actionable, because that might be done in a legiti mate and innocent way, he said he would not hesitate to pronounce the publication libellous, " if there was anything in (it) from which it could be fairly inferred that the defendant meant to charge, or in duce thepublic to believe, that the plaintiff had been guilty of extortion and oppression." Such inference is one that cannot be avoided in the present case; and holding the publication to be libellous and actionable *per se*, we proceed to consider other questions as they are presented by the assignment of errors.

The defendants filed a plea of justification, that it is true the plaintiff " was engaged in the business of loaning money in Jacksonville * * from time to time, and was in the habit of loaning money to widows and orphans and other poor people at large and exorbitant rates of interest to the great damage and impoverishment of the persons aforesaid who borrowed money from him, which are the same facts charged and intended to be charged in the alleged libelous article."

To this the plaintiff demurred on the ground that the "justification is not as broad as the charge, and is entirely different from the charge." The demurrer was sustained, and this is assigned for error. The defendants contend that the plea is good as justifying one of the several charges, which if proven would go in mitigation of damages in case the plaintiff is entitled to a verdict on the charges not justified, citing Odger on Libel and Slander, 436. See also Stacey vs. Portland Pub. Co., 68 Me., 279. This is the rule, but with the qualification that the part justified "is distinct and severable from the rest;" and it is also necessary that the "precise charge must be justified, and the whole of the precise charge." Odger, *supra*. There are three servable charges in the publication before us, and the one sought to be justified relates to hard dealings with widows and orphans. If the plea covers the whole of that charge, or meets it precisely as made, it is a good plea without any justification of the other charges. It will be seen, however, that this is not done. The charge was not simply that the plaintiff inflicted untold sorrow upon widows and orphans, or in the language of the plea, loaned them money " at large and exorbitant rates of interest to (their) great damage and impoverishment;" but that he did this under pretence of being " a philanthropist and benefactor of the poor. This latter was a substantive portion of the charge, and the plea is bad in not justifying as to that portion, both on the ground that it cannot be fairly severed from the other portion, and that the precise, or whole, charge is not justified. Hence, the demurrer was properly sustained.

We do not think, in reference to the next error assigned, that the last paragraph of the first charge given to the jury at the request of plaintiff, was erroneous. The charge that to publish of a man that he is a " hypocrite," " a dishonest

man," is libelous, and constitutes a cause of action, is correct, and in giving this, in the absence of any evidence of the use of such words, the court cannot be considered as announcing an abstract and misleading proposition, for the reason that it was but a foundation for the further portion of the charge to which there was evidence, that to " publish of a person words that imply that he is a hypocrite or a dishonest man is libelous." It was in effect saying, in the light of the evidence in the case, that imputation of hypocrisy or dishonesty, is as libelous when veiled under words which mean that, as if made directly by the words themselves.

The third and fourth errors assigned complain that the corresponding charges of the court confine the jury, in determining whether the publication had a defamatory meaning, to the language set forth in the declaration without regard to the whole article published. This is a simple misapprehension of those charges, as they were preceded by reference to the belief of the jury founded on the evidence, and that evidence included other portions of the article than those copied in the declaration, in fact all other portions.

The next alleged error is against the charge that the jury might take into consideration the financial ability of the defendants, and further that if they " believe the defendants did actually intend to injure the plaintiff by the publication, * * * then you must award heavier damages than you would award in case you find that the defendants did not have such intention." In so far as the charge relates to the financial ability of the defendants, the objection to it presents a much mooted question, and the authorities are in conflict. But without discussing the point, we think the weight of authority and reason are in favor of the doctrine that if the libel is one for which the jury conclude from the evidence that exemplary or punitive damages should be awarded, the pecuniary cir-

cumstances of the defendant is a proper matter of evidence. Obviously what would be pecuniary punishment to a man of small means would not be felt as such by one of large means, and it would seem that some regard should be had to this, though not in a spirit of prejudice against the latter class. For discussion of the question and authorities, see 67 Am. Dec., n . 565. See also Adcock vs. Marsh, 8 Ired., (Law), 360 ; Bennett vs. Hyde, 6 Conn., 24 ; Flagg vs. Roberts, 67 Ill., 485 ; Buckley vs. Knapp, 48 Mo., 152 ; Karney vs. Paisley, 13 Iowa, 89.

As to that portion of the charge relating to the intention of defendants, preceding this in the charge was given the common doctrine that " if the defendants published libellous matter they are presumed in law to have intended all the probable consequences of such publication "—the law being that as against this presumption a defendant will not be permitted to give evidence showing there was really no intention to injure, though he may show this in mitigation of damages. The counterpart of the rule will permit evidence of actual intention to injure, looking to aggravation of dam-ages—Townshend, section 91. And this, it is clear, is what the court meant. But counsel object to the charge on the ground that it permits the jury to determine upon the ques-tion of actual intention on their own belief, when there is no evidence on which to base the belief. The object in view in reference to such intention was, of course, to deter-mine if there was malice such as would justify a verdict for aggravated damages ; and in that view it cannot be said there was no evidence before the jury. The language of the publication itself may be considered, and though the occasion for it may be a legitimate one, as in commenting on the demerits of a candidate for office, yet if it is in ex-cess of the occasion, disproportionately abusive, and runs into expressions libellous in their nature, and not privileged,

the jury may find therein proof of malice. Townshend, section 399; Odgers, 279–80. It is easy to conceive cases in which the language alone, without any extrinsic evidence, would satisfy a jury that the publication was made in malice. And that is a question for the jury. In this case it was their province, the publication being actionable *per se*, to determine how far, if at all, the language went to show actual intention to injure, or malice, and the court did not err in charging on that as one of the matters about which there was some evidence before them.

The objection to the seventh charge falls, because based on the mistaken notion that the language of the publication is not actionable *per se*. And the further objection to that and other charges, that in giving them the Judge did not sign and seal his ruling, is not available here, as no exception was taken on that account. Southern Express Co. vs. VanMeter, 17 Fla., 783.

The last assignment of error is against the refusal of the court to grant the motion for a new trial. The chief grounds of the motion have been considered already, and we find no error in the charges objected to which we have not commented on; and it only remains for us to say whether the verdict should be set aside because it is against the evidence and the charges of the court, or because in giving $3,000 damages it is excessive. From what we have already said, holding that the language of the publication is actionable *per se*, if it related to the plaintiff, and related to him in his business character, it follows that we must hold that the verdict was properly found in his favor. Whether it did so relate was left as a question for the jury under the following charge given at the requests of appellants: "It is a question for the jury to determine whether or not the alleged libel bears the construction which the

plaintiff in his declaration seeks to put upon it;" and other charges for appellants gave proper instructions as to what matters should be considered and how considered, in order to arrive at the correct construction of the language alleged to be libellous. From our examination of the evidence, we do not think the finding of the jury, under those charges, was a strained one. The publication was to discredit Mr. Greeley as a candidate for Congress. From the terms of the article itself there can be no doubt that the language complained of related to him, and from the evidence, no doubt that the language related to him as well in his business dealings as in his personal character. He was a banker engaged in loaning money. And we think the jury might well have regarded the language as meaningless if not to be construed as the declaration construes it. The use of the word "if" preceding the defamatory language cannot be regarded as entirely supposititious. That it forbid by the whole tenor of the article; and if not merely supposititious, the language resolves itself, divested of the "if," into the meaning put upon it by the declaration. At any rate, the jury, to whom appellants had the question referred, so found, and we see no sufficient reason to disturb their finding. Nor do we feel at liberty to say that the verdict was excessive. The evidence shows that the plaintiff was a man of high standing, doing a large business, considerable of which was in lending money, and that his business acquaintance through the State was very large. It also shows that the paper in which the publication was made was the leading daily of the State with a large circulation in the State, and subscribers in almost every State of the Union. The occasion of the publication was to expose the unfitness of the plaintiff for an office for which he was a candidate before the people. While the charges might be justified if they were true, the fact that they are false, which is ad-

mitted by the plea of not guilty, carries them beyond the line of legitimate denunciation of a candidate ; and the occasion conferred no privilege to step over that line. His character as a business man was not involved except so far as it might show that he was untrustworthy, and libellous charges to show this, if not true, are as gratuitous as if he were not a candidate, but being made in such a connection may become to the jury more redolent of malice. When, with this and the other facts, the strongly libellous matter of the publication is considered, and its tendency to injure weighed, a court would assume more than we think is authorized, to say that the jury was controled in the amount of its verdict by any improper influences or prejudices ; and in the absence of this, when the amount does not appear to be grossly excessive, the verdict should not be disturbed.

In our opinion the judgment should be affirmed.