ISAAC A. STEWART, *Plaintiff in Error*, v. CHRISTOPHER O. CODRINGTON, J. HALL BRUMSEY, J. EDWARD BIGELOW, EDWARD E. ROPES and URIAH M. BENNETT, *Defendants in Error*.

1. In an action for libel any language published of a person that tends to degrade him, or bring him into ill repute, or to destroy the confidence of his neighbors in his integrity, or to cause other like injury is actionable *per se*, and in such a case it is not necessary to allege special damages.

2. In order for the plaintiff to be entitled to prove that he was libeled in his office as Judge of the Criminal Court of Record, or in his business as a solicitor or attorney, it is essential that the declaration should allege that the alleged libelous matter was published of and concerning the plaintiff in *his said office as judge or in his business as a solicitor or attorney.*

3. When matter which would otherwise be a privileged communication or qualifiedly privileged communication, is alleged to have been published falsely, recklessly and maliciously with intent to injure the plaintiff, such allegation deprived it of the character of a privileged or qualifiedly privileged communication.

4. It is perhaps not the best practice to recite or state the facts which go to make up a cause of action, after a "whereas," yet as such practice has been followed by many authorities, we are not disposed to hold that where this is done, no cause of action is alleged. The defect is a formal one which could only be reached at common law by special demurrer.

5. In a joint action against alleged joint tort feasors all the defendants except one joined in a demurrer to the declaration —one defendant demurred to the declaration separately. The demurrers were separately heard on the same day and separately sustained, and separate judgments upon the demurrers entered in favor of the defendants. A single writ of error was sued out by the plaintiff as though there was but one judgment. No motion was made under Rule 4 of the Rules of the Supreme Court to dismiss the writ of error, but the case was argued on its merits. *Held*, that inasmuch as it took both judgments to dispose of the entire case of the plaintiff, and in-

asmuch as no motion was made to dismiss the writ under our rules, this court would not treat the error, if there was any, as jurisdictional.

This case was decided by Division B.

Writ of Error to the Circuit Court for Volusia County.

The facts in the case are stated in the opinion of the court.

*Egford Bly,* for plaintiff in error;

*D. U. Fletcher, Cockrell & Cockrell* and *E. E. Ropes,* for defendants in error.

HOCKER, J.—On the 7th day of May, 1906, the plaintiff in error filed a declaration in the circuit court of Volusia county, the first and second counts of which are as follows:

"Isaac A. Stewart, plaintiff, by Egford Bly, his attorney, complains of Christopher O. Codrington, J. Hall Brumsey, J. Edward Bigelow, Edward E. Ropes and Uriah M. Bennett, defendants, in a plea of trespass on the case. For that whereas the plaintiff, before and at the time of the committing by the defendants of the several grievances hereinafter mentioned, was a person of good name, fame and reputation, and deservedly enjoyed the esteem and good opinion of his neighbors and other worthy citizens of this state; and whereas, also, the said plaintiff, for a long time before the committing of the said several grievances by the said defendants, had been and was and still is an attorney at law and solicitor in chancery of the state of Florida, and had used, exercised and carried on the profession and business of attorney at law and solicitor in chancery with

great credit and reputation; and was then, and from thence hitherto hath been and still is, judge of the criminal court of record in and- for the county of Volusia, assigned to keep the peace of the state in and for said county of Volusia, and also to hear and determine misdemeanors and divers felonies committed in said county, and during all that time governed and conducted himself in his said office with justice, uprightness and integrity. Yet the said defendants, well knowing the premises, but contriving, conspiring and wrongfully and maliciously intending to injure, prejudice and aggrieve the plaintiff, and to bring him into public scandal, disgrace and disrepute, and to injure the good name and reputation of the plaintiff as aforesaid, and also in his said profession and business of attorney and solicitor as aforesaid, and to further cause it to be suspected and believed that the plaintiff had acted corruptly and unjustly in his said office of judge of the criminal court of record of Volusia county, did, in the year 1905, and in the months of April and May of said year, falsely, wickedly and maliciously publish and cause and procure to be published of and concerning the plaintiff, to divers good and worthy citizens of the state of Florida, in a certain written letter signed with the names of the defendants, Christopher O. Codrington, J. Hall Brumsey, Uriah M. Bennett, and one John A. Bradley, and addressed to Hon. N. B. Broward, governor of the state of Florida, the following false, malicious, defamatory and libelous words and matters of and concerning the plaintiff, to-wit: 'Isaac A. Stewart (meaning plaintiff) and James W. Perkins are unscrupulous office holders—that they (meaning plaintiff and said James W. Perkins) are not fit and competent servants of the people.' They, the said defendants, meaning thereby to say and to charge and to cause to be published of and concerning the plaintiff, that plaintiff was an unscrupulous, unfit and incompetent

judge of the said criminal court of record of Volusia county, Florida.

Whereby, and by means of the committing of which said grievance by the defendants, the plaintiff has been and is greatly injured in his good name, fame and reputation, and has been brought into public scandal and disgrace, and has been and is greatly injured, prejudiced and aggrieved in his said office, and has been and is otherwise greatly injured; to the damage of plaintiff in the sum of $18,000, wherefore he brings this suit.

(2). And for that, whereas the said defendants, further contriving, conspiring and intending to injure and damnify the plaintiff as in the first count hereof set forth and alleged, afterwards, to-wit, in the year 1905, and in the months of April and May of said year, falsely, wickedly and maliciously did publish and cause and procure to be published of and concerning the plaintiff, to divers good and worthy citizens of the state of Florida, in a certain other written letter signed with the names of the defendants, Christopher O. Codrington, J. Hall Brumsey, Uriah M. Bennett, and one John A. Bradley, and addressed to Hon. N. B. Broward, governor of the state of Florida, the following false, malicious, defamatory and libelous words and matters of and concerning the plaintiff, to-wit: 'People who are political friends of theirs (meaning of plaintiff and of one James W. Perkins) are practically exempt from punishment; persons who swear out warrants against any one who may have been interested in aiding them (meaning plaintiff and said James W. Perkins) in any way in securing their offices (meaning the office held by plaintiff and by said James W. Perkins) are persuaded to effect settlements and the criminal prosecutions are dropped.' They, the said defendants, meaning thereby to say and to charge and to cause to be published of and concerning the plaintiff, that plaintiff had wrongfully and corruptly used his

power and influence as judge of said criminal court of
record of Volusia county for the purpose of protecting
his political friends from punishment in said court for
criminal offenses; and meaning thereby further to say
and to charge and to cause to be published of and con-
cerning the plaintiff, that plaintiff as judge of said crim-
inal court of record had participated in and procured
the compounding of criminal charges pending in said
court against persons who had aided plaintiff in securing
his said office.

Whereby, and by means of the committing of which
said grievance by the defendants, the plaintiff has been
and is greatly injured in his good name, fame and repu-
tation, and has been brought into public scandal and
disgrace, and has been and is greatly injured, prejudiced
and aggrieved in his said office, and has been and is
otherwise greatly injured; to the damage of the plaintiff
in the sum of $18,000, wherefore he brings this suit."

There are twenty other counts similar in construc-
tion to the second count, except that the libelous lan-
guage in the twelfth count is alleged to have been con-
tained in an affidavit made by E. E. Ropes, and in all
the remaining counts to have occurred in so-called pleas
filed by E. E. Ropes in a case pending between the
plaintiff and E. E. Ropes, and which pleas were prior to
the alleged publication of the libels stricken from the
files of the Circuit Court in which the case was pending,
as being libelous and irrelevant.

In the fifth, fourteenth, fifteenth, seventeenth, eight-
eenth, nineteenth and twentieth counts the plaintiff is
alleged to have been injured in his good name, fame
and reputation, and has been brought into public scan-
dal and disgrace; in the sixth, sixteenth and twenty-
second he is alleged to have been injured in his good
name, fame and reputation, and in said business and pro-
fession of attorney and solicitor, and has been brought

into public scandal and disgrace.  In all the remaining counts it is alleged that the plaintiff has been and is greatly injured in his good name, fame and reputation, and has been brought into public scandal and disgrace, and has been and is greatly injured in his said office.

Codrington, Brumsey, Bigelow and Bennett jointly demurred to this declaration and each count thereof as being bad in substance, and set out the following matters of law to be argued:

"1.   The alleged libelous words are not actionable per se and special damages are not shown.

2.   The alleged cause of action is in the nature of malicious prosecution and want of probable cause is not averred.

3.   Non-constat, the allegel libel is a privileged publication.

4.   The alleged libel is a qualifiedly privileged publicaion, and express malice is not alleged.

5.   The averment as to whom the publication was made is vague, indefinite and insufficient.

6.   The profession, office, business or occupation wherein or as to which the plaintiff may have been damaged is not issuably averred.

7.   The profession, office, business or occupation wherein or as to which the plaintiff may have been damaged is not so averred as to show the alleged words are actionable.

8.   It is not duly made to appear that the defendants knew the plaintiff was an attorney or judge.

9.   It is not duly averred that the allegel libelous words were published with reference to the plaintiff as an attorney or judge.

10.   The time of publication is not averred in such sort as to show a cause of action at the institution of this suit.

11.   The mode and manner of publication, that is to

say, whether by reading aloud the alleged writing, by posting it, by exhibiting it, by printing it in a newspaper or otherwise, is not averred.

12. The fact that the alleged words were published by the defendants is not issuably averred, nor indicated otherwise than by recitals.

13. Essential elements of the alleged cause of action are not indicated otherwise than by recitals merely.

14. The necessary allegations of malice are not issuably averred.

15. It is not made to appear that the alleged libelous words were knowingly used in the damaging sense as they are construed by the plaintiff."

Ropes separately demurred to the declaration and set out the following matters of law to be argued:

"1. The declaration should state, in the entitling thereof, the form of the action.

2. The whole of the alleged affidavit mentioned in the 12th count should be set forth.

3. The whole of the alleged plea, or pleas, mentioned in the counts numbered 13 to 21 inclusive, should be set forth.

4. It appears from the declaration that the matters complained of in the counts numbered 13 to 21, inclusive, are barred by the statute.

5. The 12th count does not set out or state the date of the alleged affidavit therein complained of, or name those to whom publication was made.

6. All the matters complained of in the declaration are, as therein appears, 'privileged' communications.

7. All the matters complained of in the declaration are, as therein appears, 'justified' communications.

8. The declaration does not show that this defendant is jointly liable with the other defendants, or any of them.

9. The declaration sets forth no alleged facts which constitute conspiracy.

10. The declaration, if true, shows that John A. Bradley is a proper and necessary defendant in this action.

11. The declaration should name the others, besides N. B. Broward, to whom publication was made.

12. The declaration should state the amount of plaintiff's former income from his practice of law, and how much the same was diminished because of the alleged libel.

13. The declaration charges slander, but alleges no facts showing slander, nor does it state to whom any slander was spoken, or the date thereof.

14. Many other errors, and defects, and deficiencies, apparent of record."

Both of these demurrers were heard on February 13th, 1907, and were sustained by the court, and plaintiff not desiring to amend the declaration the court gave judgments for the defendants.

It is contended here on behalf of the defendants that the words alleged to be libelous in the various counts are not actionable *per se,* and that special damages are not alleged; and further that the words alleged to be libelous are not actionable *per se* if not published with reference to plaintiff's office or profession, and it is not alleged that they were so published. No particular count of the declaration is mentioned, either in the demurrers or in the brief filed here, as being obnoxious to these objections. This court has held that in libel any language published of a person that tends to degrade him, or bring him into ill repute, or to destroy the confidence of his neighbors in his integrity, or to cause other like injury is actionable *per se,* and that in such cases it is not necessary to allege special damages.   Montgomery v. Knox, 23 Fla. 595, 3

South. Rep. 211; Jones v. Greeley, 25 Fla. 629, 6 South. Rep. 448.   See also 25 Cyc. 250.

The alleged libelous language set out in counts one and two is, we think, libelous *per se,* imputing a want of integrity in the plaintiff. 25 Cyc. 346.

It is true, as contended, that there is no allegation in any count that the libelous matter was published of and concerning the plaintiff in his office as the judge of the criminal court of record, or as a solicitor or attorney, and we think such allegations are necessary in order to entitle the plaintiff to prove that he was libelled in such office or business.   Saunders on Pl. & Ev. 915; Newell on Slander and Libel (2nd ed.) 700.   He will be confined therefore to such damages as he may be able to prove he has sustained in his private character, outside of these considerations (13 Ency. Pl. & Pr. 38), as the declaration is broad enough to cover any such possible damages.

It is further contended that the "alleged libel was a privileged communication," and it is not averred that it was made "maliciously and without probable cause."

The declaration in substance avers that the defendants conspiring and maliciously intending to injure the plaintiff in his profession and as judge falsely, wickedly and maliciously did publish and cause and procure to be published of and concerning the plaintiff, to divers good and worthy citizens of the state of Florida, in etc., the libelous matters contained in the several counts.   These allegations, if true, we think, deprives the alleged libelous matters of the character of provileged publications or qualifiedly privileged publications under the doctrine laid down in Coogler v. Rhodes, 38 Fla. 240, 21 South. Rep. 109, for it is there held what would otherwise be a qualifiedly privileged communication is not so if the publisher is actuated by malice and in this case there is the positive averment of malice.   See Abraham v. Baldwin 52 Fla. 151, 42 South. Rep. 591.

As to the alleged libelous matters set out in the counts numbered from 13 to 22 inclusive, which it is alleged is contained in pleas filed by Ropes in a case pending in the circuit court, it is contended that these matters are privileged, and that it is not averred they were not relevant to the issues.

The question whether defamatory words published in the due course of legal procedure are libelous was considered by us in the case of Myers v. Hodges, 53 Fla. 197, 44 South Rep. 357. It is there held that if the words alleged to be libelous are connected with relevant or material matters to the cause in hand or subject of inquiry, they are absolutely privileged, and if not relevant to the subject of inquiry they are conditionally privileged, and to be actionable the publication must be malicious. The declaration alleges that the pleas were stricken from the files of the circuit court as being libelous and irrelevant. If this is true the alleged libelous matter would not be absolutely privileged. The declaration also alleges that the alleged libelous matters were published maliciously. It seems to us that these counts of the declaration state good causes of action issuably averred under the decisions of this court, in so far as the foregoing contention is concerned. It is contended that each count of the declaration fails to allege a cause of action because the facts are simply recited after a "whereas." There is no doubt that the Virginia cases cited sustain this contention. Donaghe v. Rankin, 4 Munford (Va.) 261. This question was discussed and the authorities reviewed in the case of Burton & Co. v. Hansford, 10 West Va. 470. It is there shown that while the rule announced in Virginia was in accordance with old English cases the court of common pleas did not follow it. Many of the writers use "Whereas" as a part of the inducement of a declaration. Andrews Stephen's

Pleadings, 122; Shipman's Common Law Pleading, 200; Newell on Slander and Libel (2nd ed.) 686.

Under the changes effected by our legislation in the system of common law pleading, it is certainly unnecessary, if not erroneous, to use the word "whereas" in the inducement of a declaration for libel. Secs. 1448, 1449 General Statutes of 1906. If it be objectionable in any case it would seem that the defect is a formal one which could only be reached at common law by a special demurrer. Brown v. Thurlow, 16 M. & W. 36; 2 Saunders on Pl. & Ev. part 2, p. 910; 11 Ency. Forms, 345. Our statutory remedy for such a defect is a motion to amend or reform the declaration.

We have examined all of the grounds of demurrer as carefully as we could with the lights before us, and we are of the opinion that the court below erred in sustaining the demurrers to the declaration. It seems to us to substantially state a cause or causes of action. And in this connection it is proper to say that in the brief filed by the defendants in error no special attack is made on any special count of the declaration. If any one of these counts is defective in matter or otherwise our attention has not been directed to it. The entire assault on the declaration is a general one. We have read all of the counts and are of opinion that in several of them at least the matters alleged are libelous *per se*. To publish of a man that "he is a hypocrite, a wolf in sheep's clothing, who steals the livery of Heaven to serve the devil in," or that "he is at the head of the most villainous gang of thieves that ever plundered the taxpayers of Volusia county," or that "he is vicious, profligate, malevolent and vindictive," or that "he is a liar, or perjurer," we think is libelous *per se*. As we have said before there is no allegation that any of the libelous matter was published of and concerning the plaintiff in his official character as

judge, or concerning his business as a lawyer. We therefore think he is not entitled to recover upon any count by reason of the fact that he was such judge or attorney.

The judgments of the trial court sustaining the demurrers to the declaration are reversed and the cause remanded for further proceedings.

TAYLOR, P. J. and PARKHILL, J. concur;

· SHACKLEFORD, C. J. and WHITFIELD, J. concur in the opinion.·

COCKRELL, J. disqualified.

### On Rehearing.

HOCKER, J.—It is contended in the briefs filed by the defendants in error that the case should be dismissed because there is but a single writ of error, and the record shows there were two separate judgments in the circuit court—one in favor of Ropes and the other in favor of the other defendants—both entered on the 13th of February, 1907. Undoubtedly it is the rule that two separate judgments cannot be taken to an appellate court by a single writ of error. A final judgment is said to be one which concludes all the necessary parties on the merits in a cause, and such a judgment is necessary to support a writ of error. It was held by this court in the case of Ropes v. Lansing, 46 Fla. 231, 35 South. Rep. 863, that "where there are two co-defendants to a suit, and one of them demurs to the declaration, and upon the sustaining of such demurrer the suit is dismissed as to such demurring defendant, but is still pending as to the other defendant, such order dismissing the case as to such defendant is not such a final judgment as will support a writ of error." Under the authority of

Stewart v. Codrington, et al.—Opinion of Court.

this case, a writ of error could not have been taken in this case until the whole case was disposed of as to all the parties.    No motion was made under rule 4 of the rules of the supreme court to dismiss the writ of error, but the case was argued thoroughly on its merits by all the defendants except Ropes.

In the case of Brown v. Spofford, 95 U. S. 474, there were two separate suits by the same plaintiffs against the same defendants based on promissory notes; one case had been tried and judgment rendered, before trial in the other.    Bills of exception purporting to be applicable to each case were permitted to be filed, without consolidating the cases, and they were removed to the supreme court by one writ of error.    The supreme court condemned the practice as irregular, but as there was no proper objection made, it exercised jurisdiction.

In the case of Louisville & Nashville R. Co. v. Summers, 125 Fed. Rep. 719, it is held: "Where two separate actions depending on the same facts were consolidated and tried together for convenience only, but the verdicts and judgments were separate, it is improper to include both in a single writ of error."    Still the court held this to be an irregularity which could be waived by the parties.    See also the case of Waters-Pierce Oil Co. v. Van Elderen, 137 Fed. Rep. 557.

In the instant case the two judgments disposed of the whole case of the plaintiff in his joint suit against the defendants.    The effect of the two judgments was single as to him.    As no direct attack was made on the writ of error, we are not disposed to regard the question presented as jurisdictional, but at most, an irregularity which has been waived.

Taylor, P. J., and Parkhill, J. concur.

Shackleford, C. J., and Whitfield, J. concur in the opinion.

Cockrell, J., disqualified.