No. 622.

## The Wabash Railroad Company v. Ferris.

RAILROAD.— *Complaint Against.—Sufficiency of Allegation.—Damage to Animals.— Cattle-Guards.—Fence.*—In an action against a railroad company for the killing of domestic animals by reason of the company's failure to properly fence their railroad track and maintain proper cattle-guards, the allegation that the horses went upon the railroad by reason of defendant's failure to maintain sufficient fences and cattle-guards was held to be equivalent to the allegation that they went upon the railroad at the point where it was not securely fenced.

SAME.— *Cattle-Guards. — Sufficiency. —Question of Fact. —Ordinary Domestic Animals.— Presumption as to.—Inferences.*—The question of the sufficiency of cattle-guards on a railroad is a question of fact, and where the evidence shows that a cattle-guard should be from twenty-eight to thirty inches in depth when the rails are seven inches apart, and the special finding states that such cattle-guard was only from fourteen to twenty-two inches in depth, the legitimate inference is that the cattle-guard was insufficient; and from the finding that the horses did pass upon said railroad, and that at that place the cattle-guards were insufficient, it must be inferred, in the absence of a contrary finding, that the horses were animals of ordinary foraging propensities.

EVIDENCE. — *Cross-examination.— Witness Questioned as to Whether He Was Subpœnaed in the Cause.*—Where a court allowed a witness to be asked on cross-examination whether or not he had been subpœnaed as a witness in the cause, it was held that the question was a proper one as affecting the relationship of the witness to the cause of action or to the parties.

From the Huntington Circuit Court.

*C. B. Stuart, T. A. Stuart, W. V. Stuart* and *E. P. Hammond,* for appellant.

*J. B. Kenner* and *A. Hess,* for appellee.

CRUMPACKER, J.—Ferris recovered a judgment against the railroad company, in the court below, for damages for killing two horses.

The company appeals from the judgment, and the first assignment of error brings in review the action of the trial court in overruling the demurrer to the complaint. The objection urged against the complaint is that it does not show that the railroad was not securely fenced at the point where the animals entered upon it. In this respect the complaint alleges that at a certain highway crossing the defendant " neglected and failed to maintain a fence and cattle-guard sufficient to turn and keep off horses and stock," and that plaintiff's "horses then and there, by reason of the failure of said defendant to fence and maintain cattle-guards sufficient to turn and keep them off said railroad, strayed upon the line of said railroad, and were run against, crippled, and killed, by a locomotive, etc." The averment that the horses went upon the railroad by reason of appellant's failure to maintain sufficient fences and cattle-guards, under the liberal rule for the construction of pleadings enjoined by section 376, R. S. 1881, must be held to be the practical equivalent of an allegation that they went upon the railroad at the point where it was not securely fenced. A person of ordinary understanding would so interpret the averment under consideration, and that is the test fixed by the code for the construction of pleadings. Section 338, R. S. 1881.

Under the next assignment of error, it is contended that appellee was not entitled to judgment upon the special verdict, which is as follows :

" We, the jury, having been instructed to find a special verdict, find the facts as follows :

"*First.* We find that on December 17, 1889, the plaintiff, Joseph Ferris, was the owner of two horses, which on that day were killed by the defendant's locomotive and train of cars.

"*Second.* We further find that said horses, without fault upon the part of the plaintiff, escaped from a stable and went upon a street in the town of North Manchester, Indiana, and at a point where such street crosses the track and right of way of the defendant; we find that the cattle-guards, which were used to keep animals off the defendant's railroad, were defective in this, that the pits under such guards were permitted to fill up with dirt and debris, so that it was shallow, and the rails on such cattle-guards were seven inches apart, which permitted the plaintiff's horses to step between them and pass over such guards to the track inside; and, while inside, the defendant's locomotive and train of cars ran upon and killed them.

" *Third.* We find that the pit under such cattle-guards was fourteen inches deep in places, and that the guard or rails were seven inches apart, and so wide that animals could walk over the guard by stepping between the rails.

"*Fourth.* We find that this guard, in the condition it was found at the time said horses walked over and through it (as found in finding *three*), had existed for some time previous, and the defendant's agents passed over it every day, and should have known its condition.

"*Fifth.* We find that the defendant, the Wabash Railroad Company, is a corporation organized under, and doing business under, the laws of the State of Indiana, and ran its cars through Wabash County, Indiana, at the time and at the point where said horses were killed.

" *Sixth.* We find that the horses killed as alleged were of the value of two hundred and fifty-six dollars and twenty-five cents."

The formal conclusion is omitted.

It is urged that the verdict fails to show that the cattle-guard was insufficient to prevent the ingress of ordinary animals, and that it gives the depth of the pit only in

The Wabash Railroad Company v. Ferris.

places, and does not show that appellee's horses crossed over at such places.

We agree with counsel in the view that a railroad company is only required to maintain fences and cattle-guards sufficient to restrain ordinary domestic animals, and is not compelled to guard against the foraging propensities of exceptionally unruly beasts; but the construction that must be given the verdict in this case clearly shows that the fault was in the cattle-guard and not the horses. The cattle-guard was deficient in that the pit was so shallow, and the guard rails so far apart, that animals could step between them and walk over. This should be construed as having reference to ordinary animals, and when so interpreted, it is manifest that the cattle-guard was not adapted to the purpose for which it was designed.

The question of the sufficiency of a cattle-guard involves, to some extent, the disposition and habits of domestic animals, and is essentially a question for the jury. Whether the pit under a cattle-guard is too shallow to render it efficacious is a question of fact, and not a conclusion of law. It is no more a conclusion than the finding that a fence was so low that ordinary animals could step over it. There was no error in awarding appellee judgment upon the verdict.

It is claimed that the court erred in permitting counsel for appellee to ask a witness, introduced by appellant, on cross-examination, if he did not attend the trial without having been subpœnaed as a witness. The trial court may, in the exercise of its discretion, permit the cross-examination of a witness to take a very wide range, particularly upon questions affecting the weight of his evidence. The fact that a witness attends a trial as a volunteer may, under some circumstances, betray an interest in or feeling for or against one of the parties, which the jury would have the right to consider. Questions

affecting the relationship of a witness to the cause of action or the parties are always proper.

Finally, it is insisted that the verdict is not supported by the evidence, in that it was not shown that the cattle-guard in question was not sufficient to restrain ordinary domestic animals. There was evidence fairly authorizing the inference that the pit pertaining to standard cattle-guards should be from twenty-eight to thirty inches deep, where the cross-bars are seven inches apart, to make them efficacious, and that the guard in question was constructed with the cross-bars seven inches apart, while the pit ranged from fourteen to twenty-two inches only in depth. We can not disturb the verdict upon the evidence.

The judgment is affirmed.

Filed October 26, 1892; petition for a rehearing overruled December 30, 1892.