WILLIAM SYLVESTER, *Plaintiff in Error,* v. THE STATE OF FLORIDA, *Defendant in Error.*

1. In a trial for murder a previous difficulty between the defendant and the deceased may be given in evidence to show the feeling existing between them, but testimony as to the merits of such controversy is not admissible.

2. Error in excluding a question propounded to a witness is without injury where the question is afterwards asked without objection and answered by the witness.

3. A witness who had testified that the defendant seemed to be excited was asked on cross-examination whether the defendant's manner was different from that of other men with families dependent upon them suddenly losing a job. Objection to this question was properly sustained.

4. A witness who heard only a part of a relevant conversation may testify to such part.

5. The propriety of a ruling of the court in excluding evidence, where no exception is taken to the ruling, will not be considered.

6. Previous contradictory statements of one's own witness are admissible in evidence for the purpose of impeachment only when the witness is adverse.

7. A witness who was neither unwilling nor adverse was asked by the party calling him for the purpose of refreshing his memory whether he had not made certain statements on a previous examination. No effort was made to direct his mind to the former examination in a less leading or suggestive way, nor did it appear that such effort would have been fruitless. There was no error in sustaining an objection that the examination was leading.

8. When it becomes necessary or proper in refreshing the memory of a witness, neither unwilling nor adverse, to present to him his testimony given on a former examination the court may exercise a sound discretion in preventing this being done in a way which may lead the jury to infer that certain testimony had been given by the witness when that fact can not properly be shown in evidence before them.

9. It is admissible as affecting the credibility of a witness to show that he had come from a distance without subpœna to testify, and that his fare was paid by counsel of the party producing him.

10. It was not improper in cross-examining a witness who had came from a distance to testify, and who said he took no more interest in the case than in any other, to ask whether he meant to tell the jury that it was possible for him not taking any interest in the case to come and testify without being summoned.

11. It is not improper to ask an impeached witness, for the purpose of identifying him to the jury, when recalled for further examination on a subsequent day whether he is the same witness as to whom the impeaching testimony had been given.

12. It is not error to permit a detective, summoned as a witness but not examined, to remain in the court room during the trial.

13. The dangerous character of the deceased can not be shown by testimony that a certain witness was not willing to work under him.

14. A State witness was asked on cross-examination what he had told another witness for the State he was going to testify in the case. This question was not admissible as tending to show that the second witness had suggested to him his present testimony.

15. Testimony as to the manner of a person is not inadmissible as calling for the opinion of the witness.

16. Where similar evidence tending to impeachment is shown as to two witnesses, and there is further testimony as to one that he said he would lie for the defendant, it is not reversible error for counsel in argument to say that the credibility of one might be judged by what was shown of the other.

17. It is not reversible error for the court to refuse to interfere with the argument of counsel because it is illogical, or not based on deductions reasonably inferable from the facts.

18. Where the court charges the jury that the defendant is entitled to the benefit of every reasonable doubt as to his guilt, it is not necessary to repeat the caution with each special instruction given.

19. Instructions requested by the defendant which have been given in substance in the general charge of the court may properly be refused.

20. It is not error to refuse to give an instruction as to the right of self-defense which would justify homicide where there is such appearance of danger as would lead a reasonable, prudent and cautious man to believe the danger to exist, whether the defendant so believes or not. (CARTER, J., dissenting.)

21. Instructions upon the right of self-defense where the evidence warrants it, should contain the qualifications that the defendant to avail himself of that defense must not have been the aggressor at fault intentionally bringing on the difficulty in which the homicide occurs. (CARTER, J., dissenting.)

22. A judgment of conviction of a felony will not be reversed because the State Attorney after conducting the examination of witnesses and making the opening argument for the State, with the knowledge of the defendant and without objection from him, absents himself from the court room during a portion of the arguments of defendant's counsel and of the counsel employed to assist the State.

23. Judgment will not be reversed because about twenty of fifty jurors in attendance on the court were from a single precinct in which the prosecuting attorneys are shown by affidavit to have much personal influence, where no objection was made to the jury nor array until after verdict.

24. Objections to the regularity of the procurement of jurors neither presented in the lower court nor assigned as error here will not be considered.

25. Matters apparent upon the record, but not assigned as error and not jurisdictional or fundamental in character, need not be considered.

This case was decided by the court *in banc.*

Writ of error to the Circuit Court for Duval county.

The facts in the case are stated in the opinion of the court.

*Alex. St. Clair-Abrams, Benj. S. Liddon* and *R. H. M. Davidson* for plaintiff in error.

*J. B. Whitfield,* Attorney-General, *A. G. Hartridge,* State Attorney, and *John L. Doggett* for the State.

MAXWELL, J.—This case was argued before Division B but there being a difference of opinion among the members of that division was referred to the court for decision.

The plaintiff in error, William Slyvester, charged with the murder of one Edward Burton, was convicted of murder in the first degree and sentenced to death. From this judgment he comes by writ of error to this court.

I.  Burton was the master mechanic in the shops of the Florida Central and Peninsular R. R. Co. in Fernandina, and Sylvester a mechanic employed in the shops. The day before Burton was killed a difficulty had occurred at the shops between union and non-union men. Butterfield, a State witness, testified that on the evening before the killing, Burton taxed Sylvester with being concerned in this difficulty. This Sylvester denied, and Burton replied "it is a damned lie; he did have a hand in it." The defendant's counsel thereupon asked the witness "do you know whether he did or not?" Objection to this question was sustained by the court and this ruling is assigned as error.

It was competent for the State to introduce evidence of this difficulty between the defendant and the deceased as tending to show the relations existing between them and the animus or motive which may have influenced each in the difficulty of the following morning which resulted in Burton's death. But this would not warrant an examination into the merits of that controversy or into the truth or falsity of such charges or counter charges as may have been there made, and evidence upon this point was properly excluded. *People v. Thompson*, 92 Cal. 506, 28 Pac. Rep. 589; *Williams v. State*, 69 Ga. 11, text 31; *Commander v. State*, 60 Ala. 1; *McAnnally v. State*, 74 Ala. 9; *Bohlman v. State* (Ala.), 33 South. Rep. 44; *Martin v. Commonwealth*, 93 Ky. 189, 19 S. W. Rep. 580; *Commonwealth v. Silk*, 111 Mass. 431; *Pinckord v. State*, 13 Tex. App. 468; *State v. Sorter*, 52 Kan. 531, 34 Pac. Rep. 1036.

II.  The second assignment of error is based upon the refusal of the Circuit Judge to permit the defendant to ask a witness, Holden, upon cross-examination, whether a conversation with the defendant to which he had testified oc-

curred before or after Burton was shot. This inquiry was made of the witness several times during the cross-examination, and he four times reiterated positively his testimony given on direct examination that it had occurred before the shooting. This sufficiently cured any error in the first exclusion of the question.

III.   A short time before Burton was killed, as a result of their differences of the evening before, Slyvester by Burton's order was discharged from the machine shops where he was employed. Hernandez, foreman of the shops, testified that Sylvester came to him to ask why he was not permitted to work, and that he seemed to be excited. Upon cross-examination, after showing that Sylvester had a family whom he supported by his labor, the defendant's attorney asked the witness the following question: "Was his manner any different from that of other men with families dependent upon them suddenly losing a job?" Objection to this question was properly sustained by the court. It was competent to ascertain what the manner of the defendant was, as that it showed chagrin, or anger, or apprehension (*Higginbotham v. State,* 42 Fla. 573, 29 South. Rep. 410; *Mitchell v. State,* 43 Fla. 584, 31 South. Rep. 242), for this would aid in determining his state of mind and the motives which actuated him in his subsequent conduct. But how his manner would compare with the witness' idea of how other men would appear who had suddenly lost employment is not relevant nor material.

IV.   A witness, Milliss, testified that he had heard part of a conversation between the defendant and Burton on the evening before Burton's death. He was asked to state what he heard, and this was objected to on the ground that he had not heard the whole conversation and could not testify to only a part. This objection was without merit. *Meacham v. State,* 45 Fla. 71, 33 South. Rep. 983; *Williams v. Keyser,* 11 Fla. 234, S. C. 89 Am. Dec. 243.

V.   No exception was taken to the ruling of the court in excluding the question to the witness Glennsinger, which forms the basis of the fifth assignment of error, and it can not be considered.

VI.   Wells, a witness for defendant, who testified to the shooting of Burton by the defendant, was asked by the defendant's counsel whether he saw Sylvester backing at any time.   His reply was "I never saw him."   The defendant's counsel thereupon asked him "did you not testify at the coroner's inquest that you saw Mr. Sylvester backing away when Mr. Burton was shaking his finger at him?" and "did you not at the coroner's inquest at Fernandina, immediately after the shooting of Burton, testify in words following: 'I seen Mr. Sylvester backing away and Mr. Burton shaking his finger in his face and following him?'"   Objection by the State to these questions was sustained, and upon this ruling are predicated the sixth and seventh assignments of error.

The defendant's first contention thereunder is that the questions were proper as laying a predicate for the impeachment of the witness.   When the objections were made in the court below, the trial judge asked the attorney for the defendant if he desired to impeach his witness and he said he did not, but merely to refresh his memory.   We need not determine whether the defendant would by this be estopped from now contending that the questions should have been permitted for the purpose of impeachment.   Previous statements of one's own witness contradictory of his present testimony can be introduced to impeach him only when the witness proves adverse, and then only for the purpose of nullifying his present damaging testimony, and not as evidence of the facts narrated in the earlier statement.   The witness in this case had not proven hostile.   He did not say that he saw both parties to the affray when just before the shooting Burton was shaking his finger at Sylvester, which would give his statement, that he did not see Sylvester

backing, the force of affirmative testimony that he did not back. On the contrary, he said "Sylvester passed out of my view, and I saw Mr. Burton head him off and some little conversation passed between them but I could not hear what it was. I saw Mr. Burton shaking his left finger in Mr. Sylvester's face, and his right hand down by his side. Two or three seconds later I heard the first shot fired but I could not see who fired it on account of the smoke. Then Sylvester stepped into view and I heard the second, third, fourth and fifth shots. Q. Now when Mr. Burton was shaking his finger in Mr. Sylvester's face could you see Mr. Sylvester. A. Before the first shot? Q. Yes. A. I could not see him. I would not see Mr. Sylvester." When, therefore, the witness was asked whether he saw Sylvester backing and said he never saw him, his answer was not testimony that Sylvester did not back; but a reiteration of his previous testimony that he could not see Sylvester at that time. The questions were not admissible therefore for the purpose of impeachment.

The further contention of counsel upon these assignments is that the questions were proper for the purpose of refreshing the memory of the witness. Authorities may be multiplied holding that where a witness has by his testimony surprised the party calling him he may be interrogated as to previous statements made by him which conflict with his present testimony, the reasons given being that the witness' memory may be refreshed and he be led to the truth or to an explanation of the seeming conflict in his statements, that the party calling him may explain to the jury his reason for calling the witness, or that the effect of his present testimony may be neutralized. The latter grounds are pertinent only to cases where the witness' testimony is prejudicial, and rest on much the same reason as the right to impeach by proving the former statements of the witness by other witnesses. These have no application to the case at bar where the witness was neither unwilling nor adverse

to the defendant.  If admissible here the questions were proper solely for the purpose of recalling the truth to the memory of the witness and enabling him to testify correctly.

The right to direct the attention of the witness to his former statements for this purpose does not abrogate other rules of evidence which may be applicable to the examination.  One of those invoked by the State Attoreny in his objection to this question is that it was leading.  Cases may be found sustaining the right in such an examination to state or hand to the witness his former testimony, but this is usually done in dealing with an adverse witness who may be treated as if on cross-examination.  *Fitzpatrick v. State,* 37 Tex. Cr. App. 20, 38 S. W. Rep. 806; *Carpenter v. State,* 51 S. W. Rep. 227; *Spaulding v. Chicago, St. P. & K. C. Ry. Co.,* 98 Iowa, 205, 67 N. W. Rep. 227; *State v. Hughes,* 8 Kan. App. 631; *State v. Wright,* 112 Iowa 436, 00 N. W. Rep. 000.  Here the witness did not appear to be of feeble mind or failing memory demanding strong aids to his recollection (*Coxe Bros. & Co. v. Milbrath,* 110 Wis. 499, 00 N. W. Rep. 000; *Bashford v. People,* 24 Mich. 244), but testified clearly and positively to what he saw, nor was he an unwilling witness.  It was, therefore, a proper exercise of the discretion reposed in the trial judge to refuse to permit this leading method of examination without at least first ascertaining whether the mind of the witness could be directed to his former statement by some less suggestive means.  *Bashford v. People,* 24 Mich. 244; *People v. Lyons,* 51 Mich. 215, 16 N. W. Rep. 380; *Billings v. Metropolitan Life Ins. Co.,* 70 Vt. 477, 41 Atl. Rep. 516; *Arnold v. State,* 5 Wyoming, 439, 40 Pac. Rep. 967; *Velott v. Lewis,* 102 Pa. St. 326; 1 Thomp. on Trials, sec. 401 (3).

There was another objection to the method of examination here pursued.  Its sole legitimate purpose was to recall to the witness the truth of the case.  Even if circumstances were shown where it was proper to place before the witness the former testimony given by him, it should have

been done in a way best to effect the end sought and least violative of other principles governing the introduction of evidence. The witness' memory would have been best refreshed by an examination of the testimony given by him at the coroner's inquest, rather than by having an isolated question and answer therefrom read to him. *Simmons v. State,* 32 Fla. 387, 13 South. Rep. 896. On the other hand, reading the question to him, as was done, was calculated to impress the jury with the fact that such testimony was given, a fact with which, as we have seen, they had under the circumstances of this case no proper concern. Where the previous statement of the witness has not been reduced to writing, and a leading examination is permitted, this difficulty of course can not be avoided. With a written examination it can be avoided, and in the case of *Commonwealth v. Fox,* 7 Gray, 582, where the witness could not read, counsel were required to withdraw to one side and read the former testimony to the witness out of the hearing of the jury. See *Parlin & Orendorff Co. v. Miller* (Tex. Civ. App.), 60 S. W. Rep. 881; *Reg. v. Williams,* 6 Cox's Crim. Cas. 343. We state this not as a practice which must in all cases be followed, for it is a matter which rests somewhat in the discretion of the trial judge under all the circumstances of the case, but as a further reason why the ruling of the court in this instance was proper. There was no error in the exclusion of these questions to the witness Wells.

VII. The next following nine assignments of error question the propriety of the action of the trial court in permitting the State Attorney to show by cross-examination of a defendant's witness, Ficklin, that he had come from Charleston, S. C., without subpœna upon request of counsel for the defendant, and that counsel paid his fare. Such action on the part of the witness is not of course conclusive evidence of any undue bias in the prisoner's favor such as would affect his credibility, for he may have been animated in this conduct by the highest principle, but it was a circum-

stance proper to be considered by the jury in weighing his testimony, and its admission in evidence was not error. *Alabama G. S. R. R. Co. v. Johnson,* 128 Ala. 283, 29 South. Rep. 771; *Southern Ry. Co. v. Crowder,* 130 Ala. 256, 30 South. Rep. 592; *Ashlock v. State,* 16 Tex. App. Rep. 13; *Wabash Railroad Co. v. Ferris,* 6 Ind. App. 30; *State v. Keys,* 53 Kan. 674, 37 Pac. Rep. 167.

VIII. Another defendant's witness, Newstub, who had come in the same way from a distance to testify, and who stated on cross-examination that he took no more interest in this case than he would in any other affair, was then asked. "do you mean to tell the jury that it is possible for you, not taking any interest in the case, to come over and testify whether you have been summoned or not?" Objection to this question as tending to prejudice the jury against the witness was overruled. The question merely served to point the inference of bias drawn by the State from the witness' willingness to voluntarily appear, and to give him an opportunity to explain his attitude in the case if the inference was unfounded. We find in this no error.

IX. The same witness on cross-examination was interrogated as to whether he had not a short time before the trial been discharged from the machine shops of the railroad company for drunkenness and disorderly conduct. He admitted being discharged upon that alleged ground, but denied its truth, saying that two of his companions were guilty and not himself, though all were fined in the mayor's court for the offense; and claimed that the real reason for his discharge was the discovery by the railroad officials that his testimony upon this trial would be favorable to the defendant. On the following day, after several other witnesses had testified, he was recalled to the stand as a witness to character and upon cross-examination was asked, "are you not the same witness who testified yesterday, and who in cross-examination denied that you were discharged for being drunk, are you that same Newstub?" The pros-

ecution was of course entitled to have such testimony as would discredit the witness considered with respect to the whole of his testimony. More than forty witnesses were examined in the case and before a jury from another county than that in which they resided. With this extensive panorama of strange faces passing before the jury, it was entirely proper when one was recalled who had already been impeached, to identify him in this way to the jury, instead of rehearsing the whole impeaching examination. What has been said applies also to the question to the witness Ficklin, "are you not the same witness who testified that you came. here voluntarily from Charleston on a telegram to testify in this case from one of the attorneys for the defense in this case?"

X. There was no error in permitting the detective Fitzwater, summoned as a witness for the State, but not placed upon the stand, to remain in the court room during the trial.

XI. Hall, a defendant's witness called to testify to Burton's reputation as a dangerous man, testified that some months before Burton's death he left the machine shops in which he was employed on the day that Burton became master mechanic in charge of them, because he thought it would be unpleasant for him to remain. He was then asked "in what regard?" for the purpose apparently of showing that he was unwilling to work under Burton. Objection to this question was sustained. This ruling was correct, as the reputation of the deceased can not be shown by the relations exxisting between him and another and the unwillingness of the other to work under his direction.

XII. The next two assignments of error are predicated upon the refusal of the court to permit the defendant to ask a State witness, Acosta, what he "talked" to one Glensinger, and what he told Glensinger he was going to testify in the case. Glensinger in connection with the detective Fitzwater had been active in procuring evidence for the State, and it

is argued that the examination in question was pertinent as tending to show whether his present testimony was suggested to him by Glensinger. The questions seem framed rather to ascertain what the witness said to Glensinger than what Glensinger said or suggested to him. They were not pressed for the purpose of showing previous contradictory statements of the witness either as an aid to memory or for impeachment; but had this been the case it would have been entirely proper to refuse to permit counsel, with no information as to such statements having been made, to require a witness to repeat whatever previous conversations he may have had concerning the case on trial in the hope that some contradictory statement might be unearthed.

XIII. The twenty-fourth assignment of error, which questions the right of the State to inquire as to the manner of one whose conduct is under examination because it calls for the opinion of the witness, is disposed of by what has been said under the third assignment. *Higginbotham v. State, supra; Mitchell v. State, supra.*

XIV. In his argument to the jury the assistant counsel for the State, in commenting upon the testimony of the witness Ficklin who had come from Charleston to testify, without subpœna, said that the witness was a friend of the defendant whose testimony was unworthy of credence and the action of the witness was sufficient to authorize the jury to disregard his testimony; that furthermore, another witness, Newstub, had said he was going to lie for the defendant, that Newstub was a witness just as Ficklin was (he also had come from a distance to testify for defendant); that both were friends of the defendant, and the jury could infer from Newstub's testimony what weight they ought to give the testimony of Ficklin. This comment of counsel was objected to by the defendant, and the objection overruled. We have already seen that the circumstances mentioned were properly admitted as evidence to be considered in determining the credibility of the witnesses, and it follows

that comment upon them for that purpose was admissible in argument. Nor was it an abuse of privilege for counsel in commenting upon the testimony of two witnesses showing the same readiness to testify for the defendant, and one of whom was said to have stated that he would lie for him, to say that the credit of one might be judged by what was shown of the other. It could hardly lead the jury to believe that what was testified as to one could be regarded as evidence against the other; the testimony as to the one was used merely to illustrate the inference to be drawn from other testimony applicable to both. Even if the illustration be faulty, this court will not scrutinize with great nicety the logical force of arguments made by counsel assigned as ground for reversal. As was said by this court in the case of *Mitchell v. State, supra,* "it is not reversible error for the court to refuse to interfere with the argument of counsel because it is illogical or not based on deductions not reasonably inferable from the facts." *Proctor v. De-Camp,* 83 Ind. 559; *Missouri Pac. Ry. Co. v. White,* 80 Texas, 202, 15 S. W. Rep. 808.

XV. In this connection we will consider the fortieth assignment, like the last based upon statements made in argument by the counsel assisting the State in the prosecution. The only exception properly presented by this assignment is the one just discussed, as the assignment alleges error in refusing to grant a new trial because of the argument complained of, and the only ground of the motion for a new trial based upon this is the twenty-fourth, "because the court erred in overruling the objections of the defense to the language of John L. Doggett, of counsel for the State, in his argument to the jury and to which exception was taken." The remarks quoted in the preceding paragraph are the only ones objection to which was overruled.

Under this assignment, however, the defendant in his brief complains of objectionable remarks made by counsel in argument, where his objections were sustained and coun-

sel was rebuked by the court. As these points are not covered by the assignments of error we are not required to consider them. *Johnson v. State,* 29 Fla. 558, 10 South. Rep. 686; *Lawrence v. State,* 45 Fla. 42, 34 South. Rep. 87. But as this is a capital case, we state briefly our views in regard to them.

The State had offered testimony that the defendant had been discharged from a previous employment in Cummer's mill because of an attempt made there to kill a man. This was ruled out. In argument the counsel for the State started to comment on the occurrence as illustrating the character of the accused. This was objected to, and the trial judge sustained the objection, rebuked the language of counsel, instructed him not to comment on defendant's character, and instructed the jury not to pay any attention to this comment. Counsel apologized for his language, and then pointing to the defendant said "well, gentlemen, I am not allowed to comment on the character of the defendant, but if I were I could ————," when he checked himself and passed to a more legitimate line or argument. This was undoubtedly improper, but when counsel recollected himself before giving any intimation of what he could do if permitted, and without further objection being made or becoming necessary by opposing counsel, and with the instruction of the court upon the subject fresh in the minds of the jury, we should not regard it as constituting reversible error even if we were compelled to give the defendant the benefit of whatever appears in the bill of exceptions, though not assigned as error.

The counsel assisting the State, in another part of his argument, conceived that the counsel for defendant had charged him with unprofessional conduct and with being employed in the case by the F. C. & P. R. Co. He denied the truth of both charges, and addressing the jury as "my friends" said that they knew him and knew that he would prosecute any case only in a hightoned and proper manner,

and that when he said a thing it was so. Counsel for the defendant disclaimed making either of the contentions alleged, and objected that the statements of the counsel were not argument, but obtruded his personality upon the jury, and tended to prejudice the jury against the defendant and his counsel who were not known to the jurors. In passing upon the objections the court in the one instance held that no charge of unprofessional or dishonorable conduct had been made, and requested counsel to confine his argument to the facts in evidence. In the other instance the court sustained the objection of defendant's attorneys, and rebuked and admonished the counsel for the State and instructed him to confine himself to arguing the testimony in the case. We do not regard the conduct of counsel as of so flagrant a nature, nor its effect as so injurious to the defendant, as to demand reversal of the judgment notwithstanding the action of the court below in correcting the error. 1 Bishop on Crim. Proc., sec. 975b; *Spire v. Nitkin,* 72 Conn. 202, 44 Atl. Rep. 13; *Clemmons v. State,* 43 Fla. 200, 30 South. Rep. 699.

XVI. The twenty-sixth, twenty-seventh, twenty-eighth and twenty-ninth assignments of error are based upon exceptions to the following parts of the charge given by the court: "A defendant must himself be reasonably free from fault in the inception of the difficulty in which such homicide may be committed." "No one can by his own act provoke a difficulty with his adversary, and, having provoked such difficulty, act under the necessity produced by this difficulty and kill his adversary and justify such homicide under a plea of self-defense;" "in other words, if one with hatred and malice in his heart against a particular person provoke a difficulty with that person by act, words or otherwise, and then in such difficulty kills that person, he can not justify the act, although in the progress of such difficulty there exists a necessity to kill in order to save his life or preserve his person from the imminent danger of great harm, and

although the person killed did make the first attack in the particular difficulty in which the homicide occurred, having been provoked thereto by the acts or words of the other." "Before one not reasonably free from blame in the inception of the difficulty can justify a homicide under the plea of self-defense, he must have honestly and *bona fide* declined the combat."

These assignments are argued together by the defendant. His first and principal objection to the charges in question is that there was no evidence of aggression on the part of the defendant upon which to predicate them and they tended unjustly to lead the jury to believe that the defendant had provoked a difficulty which was really forced upon him. The evidence for the State was to the effect that on the afternoon before the difficulty Burton and the defendant had a dispute as to whether the latter had been engaged in a fight occurring in the shops that morning, and Burton told the defendant he could not work for him any more. The next morning while at work the defendant was informed that he was discharged by Burton's order, whereupon he left the shops, procured a loaded pistol, purchased some additional cartridges for the pistol which he put loose in his pocket, then returned to the shops, went up to where Burton was and a few words were exchanged, the first of which testified to by any of the spectators of the difficulty was the lie given by the defendant to Burton. Burton replied "By God, it's so," shaking the finger of his left hand in the defendant's face while his right hand was at his side. The defendant thereupon drew his pistol and shot Burton five times, killing him. We do not deem it necessary to demonstrate by argument the fact that this testimony will support the theory of original aggression by the defendant upon which the charges were founded.

It is also contended that the charge should have been so framed as to give the defendant the benefit of any reasonable doubt as to whether he was in fault. The general charge of

the court sufficiently covered this point, and it was not necessary to repeat the caution with every special instruction given.

It may be observed that the language of these instructions is quite broad, and cases may arise where, in order to present the question fairly and fully to the jury, some definition should be given of what constitutes such provocation of a difficulty as would deprive one of the right of self-defense as a justification for homicide. The evidence in this case, however, did not demand special instructions upon these points. The theory of the defense would acquit the defendant of any agency in provoking the quarrel, and the State introduced no evidence of an ambiguous or doubtful act of provocation by the defendant of such character as to require a carefully qualified instruction to prevent injustice to him. Nor were such instructions requested by the defendant.

XVII. The thirtieth to the thirty-eighth assignments, which relate to charges requested by the defendant and refused by the court, are argued together by counsel and will be so considered by us.

The first, third, fourth, fifth, sixth and ninth of these charges numbered respectively 2, 5, 6, 7, 18 and 22, are objectionable in that they ignore the necessity for a belief of danger on the part of the defendant as an element in the defense of self-defense based upon apparent danger, and authorize acquittal when reasonable grounds for such belief exist, whether the defendant entertained the belief or not.

A belief in his danger as a motive for his action is the very basis of self-defense where the danger is only apparent, not real, and such eminent writers upon criminal law as Bishop and Wharton emphasize this to the point of regarding an honest belief as sufficient whether reasonable or not to the ordinary mind, provided it be not the result of negligence. Our law has qualified this by adding that the belief must be founded upon such appearances as would in-

duce the same belief in the mind of a reasonable, prudent and cautious man. But this is merely a qualification of the right of the accused to defend by asserting a belief of danger as to the motive for the homicide, and it was never intended to substitute the appearances for the belief, as the ground of this defense. *Lane v. State,* 44 Fla. 105, 32 South. Rep. 896, and cases cited. It is without reason to say that a man who is able to see that appearances of danger are deceptive, who is in no danger and knows that he is not, should be acquitted as acting in self-defense because men of only ordinary reason and prudence in the same situation would be deceived by the false appearance of danger.

The general charge given by the court instructed the jury as to the necessity of a belief of danger by the defendant, and this would have tended to correct the error in the charges as framed, but the fact that error in a charge may be neutralized by other instructions given does not make it error for the court to refuse to give the faulty instruction.

These instructions are also defective in not containing the qualification that the defendant must not be the agressor at fault in originating the quarrel, which was, in *Padgett v. State,* 40 Fla. 451, text 457, 24 South. Rep. 145, held sufficient ground for refusing similar instructions.

It may be added that practically the whole of these several instructions, in so far as they are correct, were fully and fairly covered by the general charge of the court, except as to the point that one threatened by another has a legal right to arm himself for self-protection. If instruction upon this point was asked as a basis for the contention that the defendant when he armed himself was acting within the law, it had no support in the evidence introduced, as this showed that he armed himself by concealing a pistol upon his person, in violation of law. If, on the other hand, it was made a basis for the contention that the defendant would not in arming himself for self-protection become so far the aggressor

in whatever difficulty thereafter arose as to lose the right of self-defense, this so obviously followed from the various instructions given the jury in regard to the right of self-defense that it was not error to decline to give it when embodied in an instruction obnoxious to both of the objections which we have above pointed out.

The second, seventh and eighth instructions refused, numbered respectively 4, 20 and 21, were sufficiently covered by the charge given by the court, which was characterized by great fullness and fairness in treating of the defendant's case.

XVIII.   The thirty-ninth assignment is based upon the refusal of the court to give to the jury an instruction that the voluntary appearance of witnesses without subpœna does not in any way impugn their truth or affect or tend to impair their credibility.   This is disposed of by what has been said in paragraph VII of this opinion.

XIX.   During a portion of the argument for the defendant and of the closing argument for the State the State Attorney absented himself from the court room.   The closing argument for the State was made by counsel employed by the State Attorney to assist him in the case, but at whose instance or at whose expense is not shown.   In the case of *Thalheim v. State,* 38 Fla. 169, 20 South. Rep. 938, it was held that private counsel might be employed to aid the State Attorney in a prosecution, but the case should not be surrendered to the exclusive management of counsel privately employed, but should be conducted by and under the supervision of the public prosecutor.   In this case at the time of the State Attorney's absence from the court room the whole of the evidence in the case had been introduced, and the State's theory of the case developed in the opening argument made by the State Attorney to the jury.   The argument of the other counsel could best be controlled, in case of need therefor, by the court rather than by the State Attorney.   No objection was made to the absence of the State

Attorney, nor to proceeding with the argument without him, although his absence was known to the defendant, who is one of those who swears to it. We know of no authority which would support a reversal of the judgment upon this ground under circumstances such as these.

XX. The last assignment of error is based upon the refusal of the court to set aside the verdict and grant a new trial because the jury were not drawn nor venire issued according to law as shown by the affidavits attached to the motion for a new trial. The only ground of the motion for a new trial which questions the regularity of the organization of the jury is the first, as follows: "Because as appears from the answers of the jurors on their *voir dire* the jury was not drawn from the body of the county as required by the order of the court, but practically from one precinct in the county, to-wit: the precinct of Mandarin." This was supported by affidavits of the defendant and his attorneys that they were informed that forty-two of the fifty jurors summoned in the case were from Mandarin precinct, and that the prosecuting attorneys had great personal influence in that precinct. The deputies of the sheriff, who summoned the jury, filed affidavits that only eighteen of the jurors came from that precinct, and the answers of the jurors themselves as given on their *voir dire,* and upon which the motion was based, show only three more than that number to be from Mandarin or its vicinity. The motion, therefore, is not supported by the evidence upon the point even if a panel constituted as charged in the affidavits of the defendant would be illegal. Moreover, the facts disclosed by the examination of the jurors on *voir dire,* were of course then made known to the defendant and his counsel, and if they disclosed ground of objection to the panel, the defendant should have availed himself of it before verdict. Revised Statutes, section 2937; *Steele v. Malony,* 1 Minn. 347; 12 Ency. Pl. & Pr. 424.

This is the only attack upon the jury covered by the assignment of error, and the only one therefore which need be considered. *Lawrence v. State, supra*; *Johnson v. State, supra*. None of the other objections to it which are now urged was presented in any way to the lower court, nor are they presented to this court except in the brief of counsel and none of them goes to the fairness or competency of any of the jurors, but merely to the regularity of their procurement. The refusal to consider them does not in any way conflict with the recent decision of this court in the case of *Parker v. Dekle*, as that case authorizes the court to consider without assignment of error only errors jurisdictional or fundamental in character, and not all errors apparent upon the record.

The evidence was sufficient to support the verdict of the jury, and the judgment of the court below will be affirmed.

CARTER, J. (dissenting).—The thirtieth and thirty-second assignment of error are based upon exceptions taken to the refusal to give the following instructions: No. 2. "A person whose life or limb has been threatened by another has a right to arm himself to protect his life or limb from anticipated injury. He is not compelled to keep away from where his adversary is if he has lawful business where he is likely to meet his adversary. He has no right to arm himself for the purpose of hunting down his adversary or killing him, but if he arms himself for self-protection and meets his adversary and such adversary makes an overt demonstration calculated to induce in the mind of a reasonable, cautious man a belief from the circumstances by which he was surrounded that his life or person is in imminent danger unless he fires the fatal shot, then he has a right to use the weapon with which he has armed himself for self-protection, and if he does so and kills his adversary, the killing is excusable."

No. 5. "If you believe from the evidence that on the

morning of the homicide the defendant went to the rail-
road shops in Fernandina for the purpose of getting his
tools, or for other lawful purpose, and that while walking in
the direction of where his tools were he was spoken to by
the deceased, and if you further believe from the evidence
that the deceased advanced towards him and that the de-
ceased used opprobrious language and threatened to kill
the accused or put him out of the shops, [and if you further
believe that the conduct and actions coupled with the
threatened language of the deceased was such as to induce
a reasonable, cautious man to believe from the circumstances
by which he was surrounded that his life or person was in
imminent danger unless he fired the fatal shot, then the
killing would be excusable, and from the circumstances
as they appeared to the defendant Sylvester in the light of
the evidence must be adduced the excusing belief of the
existence of imminent danger to his life or person]."

The testimony for both the State and the defense
showed that on the morning of the homicide the defendant
was notified that he was discharged by order of the deceased,
and that he thereupon left the shops where he was employed,
but subsequently returned armed with a pistol which he
had procured while away, and there was testimony tend-
ing to prove every fact hypothesized in the refused in-
structions.

The fact that defendant armed himself and returned to
the shops where he had reason to know the deceased would
be found was one of the most incriminating circumstances
proven against him. According to his testimony he armed
himself for self-protection only, fearing the deceased would
attempt to carry out his threats of the day before, and
went to the shops not for the purpose of provoking a diffi-
culty with the deceased, but to get certain tools which he
had left there, and to get his travelling card stamped and
the money due him for work in the shops. He had a right
to an instruction from the court that if the facts so testified

to and hypothesized in the instruction were true he would not be deprived of his right of self-defense by reason of procuring the weapon and returning to the shops with it. The court had not defined the expression "reasonably free from fault" and "provoke a difficulty," used in the general charge, and the refusal of the second instruction left the jury free to say that even though defendant armed himself for self-protection alone and returned to the shops for legitimate purposes, and with no intention of harming the deceased, yet such conduct placed him in the wrong in the inception of the difficulty, thereby forfeiting his right of self-defense. The fact that defendant went away, armed himself and returned, was one from which the jury could and most probably would draw influences most harmful to defendant, and he had a right to guard against improper inferences if as a matter of law under the circumstances stated in the instruction he had not forfeited his right of self-defense by such conduct. The instruction was correct, and the court committed an error from which injury may have resulted to defendant, in refusing it. *Gourko v. United States,* 153 U. S. 183, 14 Sup. Ct. Rep. 806; *Blalack v. State,* 79 Miss. 517, 31 South. Rep. 105. See, also, *Smith v. State,* 25 Fla. 517, 6 South. Rep. 482. The court did instruct the jury that "a person who goes to a place on lawful business and is suddenly attacked in such manner and under such circumstances as would lead a reasonably prudent man to believe that he was in imminent danger of death or great personal injury, and does believe this, and that it was necessary to fire the fatal shot to avoid such danger, and acting on this belief does fire a fatal shot, *is not required to retreat to the wall, but may stand his ground,*" but this is quite a different thing from saying that the party under such circumstances will be excusable, or that if a party goes to a place on lawful business and is suddenly attacked, he may kill in self-defense even though he had previously armed himself, if such arming was only

for the purpose of self-defense, as required in the refused instructions.

The twelfth instruction given on behalf of defendant was practically the same as the fifth refused, except that it omitted the words "or for other lawful purpose," required the defendant to *believe* that his "life or limb was in danger," and omitted the words "and from these circumstances as they appeared to the defendant Sylvester, in the light of the evidence must be adduced the excusing belief of the existence of imminent danger to his life or person." Although the court in its general charge instructed the jury that the defendant must not only have had reasonable ground to believe, but that he must have believed that he was in imminent danger of death or great bodily harm in order to justify the killing on the ground of self-defense, there was nowhere in the charge a suggestion as to how the jury were to ascertain the existence or non-existence of the belief. The latter portion of the fifth requested instruction was pertinent and material because it told the jury how they were to ascertain whether the belief existed or not, to-wit: from the circumstances as they appeared to the defendant in the light of the evidence, and this part of the instruction, together with all that I have included in brackets, was copied almost literally from the opinion in the case of *Pinder v. State*, 27 Fla. 370, 8 South. Rep. 837. There is not a suggestion in the testimony tending to show that if reasonable ground existed for exercising the right of self-defense, the element of belief on the part of Sylvester was lacking. On the contrary, he testified to his belief on that subject, and there was nothing whatever to contradict it. It may be said, therefore, that there was no issue between the State and the defendant as to the fact of actual belief, but only as to reasonable ground, and such being the case the court should have given the instruction asked, even though it be construed as requiring rather than authorizing the jury to find or infer the belief from the ex-

istence of the reasonable ground. This as I understand is in accordance with the decision in *Pinder's* case and with the ruling in *Lovett's* case, 30 Fla. 142, text 164, 11 South, Rep. 550, where it is said that while the law does not regard the belief as immaterial yet where there is such an apparent necessity as would naturally cause a reasonably cautious or prudent man to believe that the necessity was actual, a defendant acting under such circumstances will be accredited by the jury with the belief that the danger was actual and the killing will be excusable, and that the *law* regards homicide committed under such circumstances of apparent danger as done under the impelling influence of a reasonable belief that the stated necessity exists, and, therefore, excuses the killing the same as if the necessity had been real instead of merely apparent. I do not regard the case of *Lane v. State*, 44 Fla. 105, 32 South. Rep. 896, as modifying or everruling the *Pinder* and *Lovett* cases. In *Lane's* case the only question considered was whether evidence as to the defendant's belief was material, and this question was answered in the affirmative. No question as to the propriety of charges upon the subject was there involved, and as the charge requested in this case is in accordance with the *Lovett* and *Pinder* cases it should have been given under the facts developed in evidence here. The court in this case by holding this instruction properly refused extends the doctrine of the *Lane* case so far as to overrule the authority of the *Pinder* and *Lovett* cases to the proposition I have cited, although those cases are not referred to in the opinion. I regret that such is the case, for under our rulings, the right of self-defense is out of harmony with decisions elsewhere under similar statutes, and out of harmony with decisions following the common law. Perhaps the nearest approach to our doctrine is maintained in South Carolina where it is held that the jury should not ask themselves the question what they would have done under the circumstances surrounding the accused

at the time, nor should they place themselves in the shoes of the defendant at the time, but they should look carefully at all the circumstances surrounding the accused as they appeared at the time the fatal wound was inflicted and ask themselves two questions: first, did the accused at the time believe that he was in such immediate danger of losing his life or sustaining serious bodily harm that it was necessary for his own protection to take the life of his assailant; second, were those circumstances such as would justify such a belief in the mind of a person of *ordinary firmness and reason.* State v. Wyse, 33 South. Car. 582, 12 S. E. Rep. 556. I do not find that this doctrine is maintained in any other State. The Supreme Court of the United States hold that the defendant must believe under circumstances that would lead a *reasonable* preson to believe. *Allen v. United States,* 164 U. S. 492, 17 Sup. Ct. Rep. 154. In West Virginia and Indiana it is held that the defendant must believe upon grounds which the jury think justified *him* in believing, and condemn instructions which require the circumstances to be such as to create reasonable apprehension in the mind of a *man of ordinary intelligence and courage,* or in the mind of a *man of ordinary prudence. State v. Cain,* 20 West. Va. 679; *Batten v. State,* 80 Ind. 394, two well considered cases. The rule in this State is that the defendant must believe upon grounds that would induce a *reasonable, prudent and cautious man to believe, Morrison v. State,* 42 Fla. 149, 28 South. Rep. 97, and in *Lane's* case we held that evidence as to defendant's actual belief is not admissible unless and until reasonable ground, *i. e.,* such appearances as would induce a *reasonable, cautious and prudent man* to believe, is first shown, thereby in effect holding that defendant's belief becomes material only when reasonable ground is shown. In Missouri, where the statute regulating self-defense is like ours, the court says "the question propounded to the defendant when on the stand as a witness as to whether he really apprehended that unless

he shot White, he, White would inflict great bodily harm on him, was properly excluded. The answer to such a question would have been perfectly immaterial and entitled to no weight whatever. The statute provides that a homicide shall be justifiable 'when there shall be reasonable cause to apprehend a design to commit a felony or to do some great personal injury, and there shall be reasonable cause to apprehend immediate danger of such design being accomplished.' The question to be settled by the jury was, whether the defendant had reasonable cause to apprehend injury to his life or limb. It was a matter of no importance whether the defendant imagined himself to have reasonable cause to apprehend danger or not, his opinion about the matter was of no importance and was not legitimate evidence. It was for the jury to say, on the facts in evidence, whether the defendant had reasonable cause to apprehend danger to his life or limb or not." *White v. Maxcy,* 64 Mo. 552. This ruling is repeated in *State v. Gonce,* 87 Mo. 627. In Wisconsin, from which State I feel sure our statute was adopted; the court say in *Clifford v. State,* 58 Wis. 477, text 487, 17 N. W. Rep. 304, "the appearances must have given the defendant reasonable ground to apprehend that such design would be accomplished, not that they caused him to apprehend the danger, reasonably or unreasonably, because to ascertain such a state of condition of the mind of the defendant would be impossible. The language of the statute is 'when there shall be reasonable ground to apprehend a design to commit a felony or to do some great personal injury and there shall be reasonable cause for believing that there is imminent danger of such design being accomplished,' etc. The statute precludes any other criterion than *reasonable* ground to apprehend and *reasonable* cause for believing. The statute can not be extended by construction or by other language, and a trial court can not do better than instruct the jury in the precise language of the statute." And in that State

it seems that the defendant's right of self-defense is to be
tested by what an ordinarily prudent man would have done
in the position of the accused, hearing what he heard, seeing
what he saw, knowing what he knew. *Perugi v. State,* 104
Wis. 230, 80 N. W. Rep. 593; *Frank v. State,* 94 Wis. 211,
68 N. W. Rep. 657. The doctrine maintained by the great
text-writers seems to be that in determining what is reason-
able ground, it must be judged of from defendant's stand-
point, as a reasonable man, and not from that of the ideal
"reasonable, cautious and prudent man." 1 Bishop's New
Crim. Law, sec. 3052 and note, 874; Wharton on Homicide,
sec. 493 *et seq.* This court should hold either with those
following the common law that the defendant's actual be-
lief based upon grounds reasonable to him, or with those
having statutes like ours that reasonable grounds alone,
*i. e.,* such as would induce a reasonable, prudent and cautious
man to believe, will justify on the ground of self-defense.
But we hold with neither when we say the defendant must
have believed upon grounds that would have induced
a *reasonable, prudent and cautious* person to believe. But
aside from these considerations, how is the defendant's be-
lief to be ascertained? And what amount of proof must
there be to require the jury to find its existence? The
belief must ordinarily be proved by circumstances. It must
be deduced as an inference from facts proven. If the facts
shown in evidence be such that a reasonable, cautious and
prudent person, placed in defendant's situation, would have
believed his life in imminent peril and the defendant acted
under such circumstances,does not this prove the defendant's
belief? The matter of belief is an operation of the mind.
If the mind of a reasonable, cautious and prudent person
would have been impressed by the circumstances with a be-
lief, can it be said the defendant's was not? We can ordina-
rily ascertain the existence of a belief in one person only
by inquiring what others would have believed under like
circumstances. The fact that the defendant (who is the

46 Fla.—8

only person that can give direct testimony as to belief) may testify as to his belief does not alter the question, for the credibility of his testimony will inevitably be tested by the rule as to what others would have believed under like circumstances. The instruction here under consideration, giving it the most strained interpretation, merely told the jury that if the circumstances were such as to induce a reasonable, cautious and prudent man under like circumstances to believe, then the defendant must be accredited with the requisite belief, and in view of the fact that defendant testified that he did believe, and there was no evidence tending to show that he did not believe, the instruction should have been given. I have not found a single case, nor does the court cite one, where it has been held that proof of circumstances and overt acts sufficient to induce a reasonably cautious and prudent man to believe would not as a matter of law be sufficient to prove that the defendant believed when acting under the same circumstances. In reason those facts are sufficient, and if the law so deems them the court should so instruct the jury. I have not overlooked the use of the word *adduced* for *deduced* used in this instruction, which I think could not have misled the jury, nor the use of the words "life or limb" and "life or person," used in both instructions, instead of the words "life or some great personal injury." The same words are used in the general charge of the court, and in other instructions given on behalf of defendant, and taken in connection with the general charge, the jury could not have been misled into the belief that those words as used implied less than the words "life or some great personal injury." I understand the court approves the ruling refusing the instructions upon two grounds: 1st. Because they omit to state the rule as to self-defense when the party is himself at fault and was the aggressor in the difficulty. 2nd. Because they do not correctly instruct the jury as to defendant's belief. I have already considered the fifth request in the light of the

second objection and as to the second instruction I do not think the last objection is tenable for two reasons: 1st. Because the court in its general charge and in instructions given on behalf of defendant told the jury that defendant must have believed, in order to be justified, so that the jury could not have been misled in that respect by giving the charge asked; and, second, even if the charge is open to the construction that it tells the jury as a matter of law that the facts stated require a finding of the requisite belief, I think it was correct under the facts of the case, for reasons already stated. As to the other objection, *viz*: that the instructions omit to state the rule as to self-defense when the party is himself at fault and was the aggressor in the difficulty, the court had already in the general charge fully and elaborately instructed the jury that in order to justify on the ground of self-defense the defendant must himself have been reasonably free from fault and must not have provoked the difficulty. In the case of *Padgett v. State,* relied on to sustain this branch of the contention the proofs both for the State and the defendant tended to show that the defendant was not free from fault, so that the requested instruction in that case unqualified as it was, was not justified by the facts. But here the testimony for defendant tends to show the contrary, and he had a right to an instruction based upon the truth of the evidence produced by him. Besides, in view of the general charge of the court, the jury could not by this instruction have been misled into supposing that if defendant provoked the difficulty he could avail himself of the right of self-defense. I think there was no error in refusing the other requested instructions assigned as error, because they were all in substance embraced in the charges given.

The matters sought to be presented under the fortieth assignment of error are not properly before the court because not assigned as error. Besides, some of the argument of counsel now asserted to have been harmful and improper

was not excepted to at the time, and this can not be considered for that reason. Having determined that the matter is not so presented as to require consideration I think the court is not justified in going further and deciding upon the matter, for even though not strictly *obiter,* it is wholly unnecessary, and my experience has taught me that intimations as to the law upon matters not necessary to be decided, bring trouble to an appellate court, and confusion in the law. Courts are not so careful to be right in their remarks upon matters not necessary to be decided, nor to state the legal principles with exactness. For these reasons I express no opinion upon these matters.

Upon other questions discussed in the opinion, while I do not agree to all that is said regarding some of them, I concur in the conclusions reached.