FRED E. BRIGGS, *Plaintiff in Error,* v. MERTON V. BROWN, *Defendant in Error.*

1. A civil action for libel will lie when there has been a false and unprivileged publication by letter or otherwise, which exposes a person to distrust, hatred, contempt, ridicule or obloquy or which causes such person to be avoided, or which has a tendency to injure such person in his office, occupation, business or employment.

2. Where a publication is false and not privileged, and is such that its natural and proximate consequence necessarily causes injury to a person in his personal, social, official or business relations of life, wrong and injury are presumed or implied, and such publication is actionable *per se.*

3. Where a publication is not privileged and is not actionable *per se* because the publication as ordinarily understood will not naturally and necessarily cause injury, damages may be recovered upon proper allegations and proofs for such special injury as is the natural and proximate, though not necessary consequence of the wrongful publication.

4. A party injured by a publication cannot recover damages therefor if the publication is true and is made in good faith in such a manner and under such circumstances as to properly serve the rights of others by and to whom the publication was made. Such a publication is privileged when properly made to serve the rights of others. The damages to the injured party if not needlessly done is not wrongful and gives no right of action.

*27*

Briggs v. Brown.—Syllabus.

5. To be privileged a publication must be by and to only those who have a right, duty or interest in the subject; the publication must be of a character, and made without malice in a manner and on an occasion to properly serve such right, duty or interest, and not to needlessly injure another.

6. Where a publication is not libelous *per se*, but special damage or injury is alleged as a natural and proximate result of such publication, and the publication is alleged to be false and to have been maliciously made, it is actionable.

7. A party is liable in tort for all the consequences that reasonably and naturally flow from or follow his wrongful act, whether the consequences were actually contemplated or not. The tortious act being established, the liability extends to all of the consequences that naturally, proximately and reasonably follow or result from such act.

8. A declaration in which it is alleged that an officer of an improvement company wrote a letter to an indemnity company stating that an employe of the improvement company for whom the indemnity company had given a bond, was delinquent in his duties to the improvement company with reference to which duties the bond was given, and that the letter was false and maliciously sent, and was received and read by the indemnity company, is not demurrable, where special injuries to the plaintiff are alleged as the result of such a publication.

9. In an action for libel where the plea admits the writing of the letter complained of, testimony that the defendant showed the witness a letter which read like the one declared on, and that defendant told the witness it was "a copy of the letter which he mailed," is corroboration of the admission of the plea and tended to prove publication, and should not be stricken.

10. Where the defendant admits sending a libelous letter, the introduction in evidence of a copy of the letter in connection with other evidence of publication is not harmful. But the admission in evidence over proper objections of a copy of a letter purporting but not shown to be from the person to whom the libelous letter was sent, containing matters relating to the privilege of the letter complained of and containing also *ex-parte* suggestions relating to the defendant is harmful error.

11. The privilege of a publication is not confined to the legal duties of the parties in the premises.

This case was decided by Division A.

Writ of Error to the Circuit Court for Dade County.

*Price & Rand,* for plaintiff in error;

*Geo. M. Robbins,* for defendant in error.

## Statement.

An action for libel and slander was brought in the circuit court for Dade county by Merton V. Brown against Fred E. Briggs. The first count of the declaration was for libel and the other three counts were for slander. The second and fourth counts were discontinued by the plaintiff during the trial. A demurrer to the evidence under the third count was sustained, the count was amended and evidence submitted thereunder. A demurrer to the evidence under the third count as amended was overruled. The jury found a verdict for the plaintiff on the first count for libel and fixed the damages at $5,000.00, and found for the defendant on the other count. Judgment was entered in accordance with the verdict and the defendant took writ of error.

The first count of the declaration is as follows: "For that whereas, the plaintiff, before and at the time of the committing by the defendant of the several grievances hereinafter mentioned, was elected to, held and exercised, an office of emolument and trust in a corporation for profit, organized under and by virtue of the laws of the state of Florida, with its principal business office

located at Miami, in the county of Dade and state aforesaid, to-wit: the office of secretary and treasurer of the Miami Investment Company, the corporation aforesaid, and has always conducted himself in the said office with punctuality, skill and honesty in the management of the business of his said office and in keeping the accounts of the said corporation and in managing the business affairs of the said corporation, and is, and was, deservedly held in great credit and esteem by the officers, directors and stockholders of the said corporation and in great credit and esteem by his neighbors, and was considered a faithful, honest, and capable officer by the various guaranty and trust companies of the United States doing business in the state of Florida, and w is enabled by and through the confidence reposed in his said capacity, faithfulness and honesty to secure the bonds of indemnity in the said various bond and indemnity companies doing business in the state of Florida whereby he was enabled to hold the position and office of emolument and trust in the said Miami Investment Company and other companies doing business in the state of Florida, whereby he daily acquired divers gains and emoluments in his said office and business to the support and maintenance of his family and the increase of his fortune. And for that, whereas, the plaintiff before the committing by the defendant of the several grievances hereinafter mentioned, held and exercised the office of secretary and treasurer of the Tropical Home Improvement Company, a corporation organized and existing under the laws of the state of Florida, whereof the defendant was the principal stockholder and the plaintiff then and there holding the office of secretary and treasurer of the said Tropical Home & Improvement Company had been required to enter into a bond with good and sufficient sureties in the sum of two thousand ($2,000.) dollars conditioned upon the safe keeping of

the moneys of the last said corporation entrusted to him, the plaintiff, as such secretary and treasurer, and the plaintiff had made and filed with the said corporation a certain bond conditioned as aforesaid with the Aetna Indemnity Company of Hartford, Conn., as surety; And for that whereas, also the plaintiff, before the committing by the defendant of the several grievances hereinafter mentioned, at a meeting of the stockholders of the said Tropical Home & Improvement Company, called and held pursuant to law for the purpose of the election of officers for the ensuing fiscal year, did nominate and elect to the office of secretary and treasurer one C. L. Huddleston to supersede the plaintiff in the office of secretary and treasurer of the said Tropical Home and Improvement Company, and thereupon the plaintiff was at once elected and installed into the office of secretary and treasurer of the Miami Investment Company, a corporation as aforesaid, and the plaintiff says that it was a condition to the holding and exercising of the said office of secretary and treasurer of the Miami Investment Company, a corporation as aforesaid, that the plaintiff should enter into a bond in the sum of $5,000.00 conditioned for the safe keeping of the moneys of the said corporation entrusted to him; that after the committing of the grievances hereinafter set forth the plaintiff applied to the Aetna Indemnity Company, of Hartford, Conn., to become the surety on such bond and also to other companies doing business as guaranty companies in the state of Florida to become surety on the bond of the plaintiff, all of which applications were denied. Yet the defendant well knowing the premises as plaintiff's calling and the necessity for such bonds, and well knowing that the plaintiff had been honest, capable and faithful in the discharge of his duties as secretary and treasurer of the Tropical Home and Improvement Company, and that the

plaintiff had carefully and faithfully discharged the duties of his said office and had kept just and true accounts of the business transactions of the said corporation and had faithfully and skillfully invested the funds of the said corporation as provided by the by-laws and had delivered and surrendered to his successor, the said C. L. Huddleston, all of the assets of the said corporation in the hands, custody and control of the said plaintiff and as such secretary and treasurer and that a full and complete settlement had been affected between the plaintiff and the said corporation, which said settlement shows that the plaintiff was not in any manner indebted to the said Tropical Home and Improvement Company. Yet the defendant well knowing the premises as aforesaid, but wickedly and maliciously intending to injure and destroy the good reputation and credit of the plaintiff in his said official position and business and in his said trade and occupation and to cause him to be regarded as a person of no credit, worth or substance, and incompetent as an accountant, and as dishonest and untrustworthy in the conduct of his said business and to prejudice and injure the plaintiff with the Aetna Indemnity Company, of Hartford, Conn., a corporation doing business in the state of Florida, who, among other things, carries on the business of becoming surety on official and other bonds, and who was then a surety on the bond of plaintiff as aforesaid, did on the 6th day of April, A. D. 1905, wrongfully, falsely, and maliciously write and publish to the said Aetna Indemnity company, a certain false, scandalous, malicious and defamatory libel of and concerning the plaintiff and of and concerning his official conduct, ability as an accountant, business circumstances and credit, in the form of a letter addressed to the said Aetna Indemnity Company,

a corporation of Hartford, Conn., and which was received by the said company, in words and figures as follows:

'MITCHEL D. PRICE,                        FRED E. BRIGGS,
     *President.*                              *Vice President.*
   C. L. HUDDLESTON, *Secretary and Treasurer.*

THE TROPICAL HOME AND IMPROVEMENT COMPANY.
BUILDING AND LOAN.

MIAMI, FLORIDA, *April 6th,* 1905.
*The Aetna Indemnity Co., Hartford, Conn.*

DEAR SIRS—I (meaning the defendant) hold an indemnity bond from your company for Mr. Merton V. Brown (meaning the plaintiff) of Miami, Florida, bond dated April 21st, 1904, for $2,000.00. On March 1st, 1905, at our annual meeting (meaning the meeting of the Tropical Home and Improvement Company) we (meaning said Tropical Home and Improvement Company) elected Clarence L. Huddleston (meaning a third party) as secretary and dismissed Mr. Brown (meaning the plaintiff) on the morning of March 8th. Mr. Brown (meaning the plaintiff) wanted to turn the books and cash over to Mr. Huddleston (meaning the third party) and for him, Huddleston, to give Brown, (meaning the plaintiff) a receipt for them without looking over the books or even counting the cash, which Huddleston (meaning said third party) refused to do, he (meaning said third party) would not accept them in any such way. After a good deal of controversy with your agent here, Mr. Frederick Morse, and Brown's (meaning the plaintiff's) lawyer (meaning R. H. Seymour) the third party (meaning one, H. C. Burgess) was called in with Mr. Huddleston and Brown (meaning the plaintiff) and the notes and mortgages looked over, then Huddleston gave Brown (meaning the plaintiff) a receipt for the books as he found them, Brown (meaning the plaintiff) going over the books carefully and itemizing all the accounts

and according to the books in his (meaning plaintiff's) own handwriting he has received from the following members payment of their stock

amounting to.............. $6,493.84    $6,493.74
                                                  6,121.37
and has accounted for payment..  6,098.89  $   372.37
we have credited error located...    21.48
                                           $6,121.37
         Amt. to be acct for..             $   372.37

Mr. Huddleston is a bank accountant and had audited the books here and ought to know what he is about. We (meaning the Tropical Home and Improvement Co.) do not claim there is a shortage in Mr. Brown's (meaning the plaintiff's) accounts. All we ask is for him (meaning the plaintiff) to go into the office and straighten it out, but he, (meaning the plaintiff) absolutely refused to do this. The only thing we can do now is to turn this over to you (meaning the Aetna Indemnity Co.). Maybe a telegram from you to Mr. Brown (meaning the plaintiff) would bring him to time, but we are unable to account for $372.37. Please attend to this at once as I (meaning the defendant) shall be here but a short time longer, and I (meaning the defendant) wish to have this matter settled up before I (meaning the defendant) go.

                     Yours very truly,
                          FRED E. BRIGGS,
                              *Vice President.*"

meaning by said letter that plaintiff had been dismissed from his office as secretary and treasurer of the Tropical Home and Improvement Company, for cause, and endeavored to get his successor to accept the books and cash and give the plaintiff a receipt without having the books checked up or the cash counted, so as to gain an

unfair advantage and escape responsibility for any short-
ages that might exist.  And meaning, further, that, after
a great deal of controversy over the plaintiff's alleged at-
tempt to get released without an accounting, a third
party was called in and looked over the notes and mort-
gages only, after which Huddleston, the new secretary
and treasurer gave the plaintiff a receipt for the books
as he found them; and meaning that these books showed
plaintiff short three hundred and seventy-two dollars
($372.37) and thirty-seven cents, meaning also that such
mortgage (shortage) existed, as was proved by the fact
that said Huddleston was a bank accountant and had
audited said books and ought to know what he was
about.  Meaning also, that it was the duty of the plain-
tiff to go into the office of the said Tropical Home and
Improvement Company and straighten said matters out
and that plaintiff absolutely refused to perform such
duty, all of which representatives were false and mali-
cious.

And the defendant then and there falsely and ma-
liciously sent the said letter containing the false, scan-
dalous, malicious, defamatory and libelous matter afore-
said by mail to the said Aetna Indemnity Company, and
the same was then received and read by the said Aetna
Indemnity Company as thereby published by defendant
to the said Aetna Indemnity Company.  By means of
the committing of which said several grievances by the
defendant, the plaintiff has been and is greatly injured
in his said good name, reputation, credit, trade and busi-
ness, and has fallen into great discredit among his neigh-
bors and other worthy persons with whom he had dwelt
and for whom he had worked, and especially the said
Aetna Indemnity Company, a corporation of Hartford,
Conn., and other guaranty companies in so much that
said guaranty companies and especially the Aetna In-
demnity Company, wholly on account of the writing and
publishing of the said false, scandalous, malicious and

defamatory libel by the defendant as aforesaid have altogether refused and still refuse to make the bond of the plaintiff as secretary and treasurer of the Miami Investment Company or to become the security on such of the bond of the plaintiff or to have any dealings with him; whereby plaintiff is prevented from obtaining any position requiring the giving of an indemnity company bond to his damage of $10,000.00; and also by means of the premises the plaintiff has been, and is, otherwise injured to the damage of the plaintiff of fifty thousand ($50,000.00) dollars, and therefore he brings this suit and claims fifty thousand ($50,000.00) dollars damages."

A demurrer to this count of the declaration was overruled and the defendant filed the following pleas to the first count: (1) Not guilty; (2) "The defendant herein, wrote the letter dated April 6, 1905, upon which count No. 1 is based, but defendant avers and says that said letter was written in good faith by him in his official capacity as vice-president of the Tropical Home Improvement Company to the Aetna Indemnity Company concerning the matters in said letter plainly set forth and designated. That the said Aetna Indemnity Company was the surety upon the bond of the said Merton V. Brown and the said Aetna Indemnity Company had entered into said bond in consideration of certain representations made by the Tropical Home Improvement Company relative to the honesty, duties, accounts and responsibilities of the said Merton V. Brown as shown by said bond, and that the Tropical Home Improvement Company was required before the issuance of said bond, to agree in writing to have the books of said company examined twice a year by an expert accountant, and the said company was furthermore required by the terms and conditions of said bond, to notify the company of any fraudulent or dishonest act on behalf of the plaintiff,

as shown by the terms and conditions of said bond, and that the said defendant in writing the letter set forth, and referred to in plaintiff's declaration in count No. 1, made said communication in good faith under an honest belief that the said Merton V. Brown had failed to comply with the terms and conditions of the said bond, and that he had failed to discharge his duties as secretary and treasurer of the Tropical Home Improvement Company, as required by said bond, and that he had failed to safely keep the moneys of the said Tropical Home Improvement Company, and to account for them as was his duty as secretary and treasurer of the Tropical Home Improvement Company, and that the books of the said Merton V. Brown as kept by himself, showed a shortage in the sum claimed in the letter, which shortage, the said Merton V. Brown, up to the time of the writing of the letter, had failed and refused to explain. Wherefore, according to the books so kept by the said Merton V. Brown, the said Merton V. Brown was indebted to the Tropical Home Improvement Company for moneys which his books show he had received, but the disbursements of which his books did not show in the sum set forth in said letter.

That the said Tropical Home Improvement Company, under the terms and conditions of the said bond, were not only required to have said books examined twice a year by an expert accountant in order to ascertain if said books were correctly kept, but they were further required to report any shortage or any sum or sums of money which said books would indicate, had been wrongfully used or embezzled, and that therefore, the letter written by the said Fred E. Briggs in good faith as aforesaid, under the honest belief that the allegations and statements contained in said letter were absolutely true, written to the said Aetna Indemnity Company, a surety on his bond, as aforesaid, was written to a party

who had an interest in the actions and conduct of the said Merton V. Brown, who was responsible for the safe-keeping of the moneys belonging to the Tropical Home Improvement Company, and for the correct keeping of his accounts, and that therefore said letter so written by the defendant as aforesaid, as set forth and referred to in plaintiff's declaration in count No. 1, was a privileged declaration upon which no action would lie.

That at the time said letter was written, there was an apparent shortage, as shown by the books kept by the said Merton V. Brown, which said books showed certain sums of money to have been collected by the said Merton V. Brown, but which did not show what disposition had been made of the same. That although said apparent shortage was not caused by the criminal act of the said Merton V. Brown, plaintiff, but rather by his negligent and careless method of keeping his books, still said books clearly indicated a shortage, and was sufficient to induce the defendant, under the circumstances mentioned, to notify the surety upon his bond of the true conditions of affairs, as shown by said books, and of the action of the plaintiff when requested to explain said affairs, and was made without any malice or any ill will towards the said Merton V. Brown, without any intent to injure the said Merton V. Brown, but solely in a business capacity in good faith, and for the purposes set forth in said letter, which is here referred to and made a part of this plea, and as fully shown in the allegations and statements contained in the above and foregoing plea.

(3)   "Defendant says that the allegations and statements contained in the letter dated April 6th, 1905, written by the defendant herein, set forth in said declaration, are true, and that said letter was a privileged communication written by the defendant herein in his capacity of vice-president of the Tropical Home Improvement Company, to the Aetna Indemnity Company, con-

cerning the actions of the said Merton V. Brown, which
actions are fully set forth, in said letter, which is hereby
referred to and made a part of this plea, and that said
letter was not written with any intent to injure, annoy
or harrass the said Merton V. Brown, and was not writ-
ten for publication, but merely for the purpose of induc-
ing the Aetna Indemnity Company to demand of Brown
that he go before the Tropical Home Improvement Com-
pany and make a satisfactory explanation of the short-
age as shown by the books of the Tropical Home Im-
provement Company when they were turned over by
the plaintiff herein to Clarence L. Huddleston, who suc-
ceeded the plaintiff as secretary and treasurer of the
Tropical Home Improvement Company."

The following replication was filed to the 2nd and
3rd pleas to the first count of the declaration:   "Now
comes the plaintiff by Geo. M. Robbins and Seymour &
Atkinson, his attorneys, and for replication to amended
plea No. 2 to count No. 1, denies that the letter of April
6, 1905, was written by the defendant to Aetna Indemnity
Company in good faith and without malice.   And he
denies that his books were examined by an expert account-
ant and showed an apparent shortage, and that said let-
ter was written in compliance with the provisions of the
bond, issued by the Aetna Indemnity Company.

And he denies that he committed any fraudulent or
dishonest act, as indicated by said letter of April 6, 1905,
or that he failed to comply with the terms and condi-
tions of the bond given by the Aetna Indemnity Com-
pany, or that he failed to account for the moneys and
securities of the Tropical Home Improvement Company
entrusted to him; and he denies that his books showed
a shortage in the sum claimed in the said letter to the
Aetna Indemnity Company.   And he denies that he
failed and refused to explain his books.   And plaintiff
further denies that the allegations and statements in the

letter written by the defendant to the Aetna Indemnity Company were absolutely true, as alleged in said plea, ·and says that said letter was false and malicious, as set forth in his declaration. And plaintiff denies that defendant wrote and published said letter to the Aetna Indemnity Company without any malice or ill will towards this plaintiff.

And for replication to defendant's third plea, plaintiff denies that the allegations and statements contained in the letter of April 6, 1905, written by the defendant to the Aetna Indemnity Company were true, and denies that said letter was written without any intent to injure or harrass this plaintiff.

WHITFIELD, J., (*after stating the facts.*)—An order overruling a demurrer to the first count of the declaration is assigned as error.

A civil action for libel will lie when there has been a false and unprivileged publication by letter or otherwise, which exposes a person to distrust, hatred, contempt, ridicule or obloquy, or which causes such person to be avoided, or which has a tendency to injure such person in his office, occupation, business or employment. If the publication is false and not privileged, and is such that its natural and proximate consequence necessarily causes injury to a person in his personal, social, official or business relations of life, wrong and injury are presumed or implied and such publication is actionable *per se*. Montgomery v. Knox, 23 Fla. 595, 3 South. Rep. 211; Jones v. Greeley, 25 Fla. 629, 6 South. Rep. 448; Ogden on Libel and Slander, 21; 25 Cyc. 243.

If the publication is not privileged and is not actionable *per se* because the publication as ordinarily understood will not naturally and necessarily cause injury, damages may be recovered upon proper allegations and proofs for such special injury as is the natural and proximate, though not necessary consequence of the wrong-

ful publication.    See 18 Am. & Eng. Ency. law (2nd ed.) 867, note 5.

The publication alleged in this case as being libelous is a letter written by the defendant as vice-president of a corporation to a company that had given an indemnity bond for the plaintiff as an officer of the corporation. The subject of the letter was the conduct of the plaintiff with reference to the office for which the indemnity bond was given.

Where injury naturally and proximately results from a wrongful publication by letter or otherwise, damages may be recovered for such injury.    If the publication is not actionable *per se, i. e.* naturally and necessarily injurious, special damages should be alleged.    If the publication is privileged, there is no right of action.

A party injured by a publication cannot recover damages therefor if the publication is true and is made in good faith in such a manner and under such circumstances as to properly serve the rights of others by and to whom the publication was made.    Such a publication is privileged because it is properly made to serve the rights of others.    The damage to the injured party if not needlessly done is not wrongful and gives no right of action.    See Sunley v. Met. Life Ins. Co. (Iowa), 109, N. W. Rep. 463; 12 L. R. A. (N. S.) 504.

.To be privileged a publication must be by and to only those who have a right, duty or interest in the subject; the publication must be of a character, and made without malice in a manner and on an occasion to properly serve the right, duty or interest, and not to needlessly injure another.    Abraham v. Baldwin, 52 Fla. 151, 42 South. Rep. 591, 10 L. R. A. (N. S.) 1051.

Where the publication is not actionable *per se,* but special damage or injury is alleged as a natural and proximate result of such publication, and the publication is alleged to be false and to have been maliciously made, it

is actionable even though the publication was made by and to only those who had a right, duty or interest in the subject, and the publication alleged is of a character and made in a manner and on an occasion to properly serve the right, duty or interest of all the parties by and to whom the publication was made. When the publication is false and was made with malice, it is not privileged, and if injury results therefrom an action for damages will lie.

A party is liable in tort for all the consequences that reasonably and naturally flow from or follow his wrongful act whether these consequences were actually contemplated or not. The tortious act being established the liability extends to all of the consequences that naturally, proximately and reasonably follow or result from such act.

Where injurious consequences do not result from the tortious act by implication of law as where they naturally and necessarily follow the act, they must be specially alleged, and such allegations should be confined to damages for injurious consequences that reasonably, naturally and proximately result from the tort.

In this case the publication alleged to have been made was by and to only those who have a right, duty or interest in the subject, and was of a character, and made on an occasion and in manner to properly serve the right, duty or interest of all the parties; but it is alleged that the publication is false and that it was maliciously made. The demurrer admits this and the privilege otherwise existing is thereby evaded. If the publication be false and made with malice, even though not actionable *per se*, it was wrongful, and if any injury to reputation reasonably, naturally and proximately resulted therefrom, a right of action accrued; since the publication, being false and made with malice, does not properly serve the rights of others, and is not privileged, but wrongfully injures the plaintiff.

The right of recovery extends to the damages alleged and proved to have been actually sustained by the plaintiff in his reputation as the natural, proximate and reasonable result of the false and malicious publication.

The declaration alleges that the defendant was the principal stockholder of the Tropical Home Improvement Company, a corporation, of which corporation the plaintiff had held the office of secretary and treasurer, and that as such secretary and treasurer, the plaintiff had given bond with the Aetna Indemnity Company as surety, in the sum of $2,000.00, conditioned for the safekeeping of the moneys of the Tropical Improvement Company entrusted to him as such secretary and treasurer. The letter appears to have been written by the defendant as vice-president of the corporation of which he is alleged to have been the principal stockholder. This shows an interest of the defendant and of the indemnity company in the subject-matter of the letter complained of. But this interest in the subject does not render the publication privileged and not actionable, unless the publication was properly made without malice and under circumstances to rightly serve the interest. The letter itself does not indicate its wrongful use or malice, and its natural meaning cannot be enlarged by inuendo. 25 Cyc. 449. If the letter states the truth and was published for good motives, the plaintiff cannot recover. Section 13 Bill of Rights; Wilson v. Marks, 18 Fla. 322. But the letter charges delinquencies by the plaintiff in relation to his stated office, such as have a tendency to injure the plaintiff in his business or employment, and the publication is alleged to be a "false, scandalous, malicious and defamatory libel of and concerning the plaintiff, and of and concerning his official conduct, ability as an accountant, business circumstances and credit." It also alleged that the defendant "falsely and maliciously sent the said letter * * * by mail to the said Aetna Indemnity Company, and the same was received and read

by the said Aetna Indemnity Company." These and other allegations admitted by the demurrer render the publication unprivileged; and special damages resulting from the publication being specifically alleged, a cause of action is stated. The demurrer, therefore, was properly overruled. Stewart v. Codrington, 55 Fla. 327, 45 South. Rep. 809.

The defendant in his second plea and in his testimony, admitted the writing of the letter complained of to the Aetna Indemnity Company. A witness testified that the defendant showed witness a letter which read like the one alleged in the declaration, and that defendant told witness it "was a copy of the letter which he mailed to the Aetna Indemnity Company." A motion to strike this testimony was properly overruled, as it corroborated the admission of the defendant and tended to prove a publication of the letter complained of.

The defendant having admitted the writing and sending of the letter alleged in the declaration, no harm could result to him by the introduction in evidence of a copy of the letter in connection with other evidence tending to show a publication of the letter as alleged. But the admission over proper objections of a copy of a letter purporting, but not shown to be from the indemnity company, in so far as it affected the privilege of the letter complained of is error. The letter so erroneously admitted in evidence contained expressions of opinion affecting the privilege of the publication and also *ex parte* suggestions relative to the plaintiff that should not have been so presented to the jury. Under the circumstances of this case the error in admitting the letter from the indemnity company was harmful.

The interest of the defendant and of the indemnity company, by and to whom the publication of the letter was made, in the conduct of the plaintiff as secretary and treasurer of the corporation is not limited to the condi-

tion of the bond given by the indemnity company for the plaintiff.

The plaintiff had been secretary and treasurer of the corporation of which the defendant was vice-president, and the fidelity and competency of the plaintiff with reference to his duties and obligations as such secretary and treasurer were of interest to the defendant as an officer of the corporation and to the indemnity company that had given his bond as such secretary and treasurer, even though the conduct reported in the letter complained of was not within the legal obligation of the bond. Employers have a right and interest in the way in which employes discharge their duties towards the employers; and indemnity companies have an interest in the business conduct of those for whom indemnity bonds have been given.

One of the issues being tried, was whether the publication complained of was privileged. This involved a consideration of the rights and interest of the defendant and of the indemnity company in the matter referred to in the latter; but there was no issue that required a determination of the legal obligation of the indemnity company on the bond given for the plaintiff, and such an issue is determined by the court and not the jury. Therefore a charge which is assigned as error that required the jury to determine the conditions of the bond and for what acts of the plaintiff the indemnity company would be liable, was erroneous, even though it required the jury to also consider the other evidence in ascertaining if the letter written to the bond company was upon a proper occasion.

It does not appear that this charge was not prejudicial to the defendant as the interest and right of the defendant and of the indemnity company in the subject-matter of the letter, and the occasion for writing the

letter, did not require a determination of the legal obligation of the bond.

If the publication was privileged the defendant is not liable, and he had a right to have his full interest and the interest of the indemnity company in the subject-matter of the letter as disclosed by the evidence and the relations of the parties, considered by the jury in determining the question of privilege without the introduction of issues not properly in the case.

It has been held by this court that a publication that is privileged is not actionable unless it is both false and malicious; and that although the publication is not true, yet if there was reasonable ground to suppose it to be true, and it was published in good faith under honest belief that it was true, and was published with proper motives, without any private personal malice towards the plaintiff, then the defendant is not liable in damages therefor.    The privilege of the publication is not confined to the legal duty of the defendant in the premises. Coogler v. Rhodes, 38 Fla. 240, 21 South. Rep. 109.

The judgment is reversed and the cause is remanded.

SHACKLEFORD, C. J., and COCKRELL, J., concur;

TAYLOR, HOCKER and PARKHILL JJ., concur in the opinion.