## SOLOW v. GENERAL MOTORS TRUCK CO.

### No. 311.

Circuit Court of Appeals, Second Circuit.

April 3, 1933.

John Thomas Smith, of New York City (Anthony J. Russo, of New York City, of counsel), for appellant.

Sporborg & Connolly, of New York City (Melville Ehrlich, of Port Chester, N. Y., of counsel), for respondent.

Before MANTON, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge (after stating the facts as above).

Undoubtedly the letter of the defendant written by Quinn was within the bounds of a limited privilege. White v. Nicholls et al., 3 How. 266, 11 L. Ed. 591; New York & Porto Rico S. S. v. Garcia (C. C. A.) 16 F. (2d) 734. In order to support this cause of action, it must be proved that the publication of the libelous writing was with express malice. Montgomery Ward & Co. v. Watson (C. C. A.) 55 F.(2d) 184; Wise v. Brotherhood, etc. (C. C. A.) 252 F. 961; Ashcroft v. Hammond, 197 N. Y. 488, 90 N. E. 1117. It is certain that Holmes, acting within the scope of his authority, with malice made a false record concerning the cause of the discontinuance of the plaintiff's service. Under familiar legal principles, the defendant did that much. For the purposes of this appeal we shall assume, without deciding, that the notation on the card was libelous per se.

As the publication of the libel by the defendant to the Paramount Corporation was submitted to the jury, and Quinn acted without malice, the judgment must be reversed unless the malice of Holmes is to be carried into the publication by Quinn. Holmes acted August 16th to make the record. His malice, imputed to the defendant, put the false record where it might be used to answer inquiries concerning the plaintiff. It was, however, for the use of the defendant in its own business, and Holmes could not know that what he wrote on the card would ever be

passed on to another, for he could not know that any inquiry concerning the plaintiff would be received, much less an inquiry from the Paramount Cab Corporation. However, it may be thought that he believed it would probably be used in replying to some request for information from somebody some time. If so, his malicious purpose to have it so used was not the malice of the defendant, since it was not in respect to anything he did for the defendant within the scope of his authority as an employee. He was not employed to supply any information to inquirers. Moreover, the making of the record and its use in replying to the inquiry were not one continuous act. It was about a month and a half after the record was made before the letter of Quinn was sent. Regardless, of these considerations, however, one fact stands out which makes it impossible to impute any malice to the defendant in the publication by Quinn. It is admitted that Quinn had none. We say nothing as to whether the malice of Holmes in doing what made this publication possible was sufficient to make him liable as an individual on the theory that his malice under the circumstances is to be carried into the publication to make it malicious so far as he is concerned, for it is enough at present to keep from confusing his status with that of the defendant. The difficulty apparently comes from the necessity for dealing with a corporation in the realm of imputed knowledge. The defendant itself, when we get into this fairyland of pure fiction, is said to know that the record was false and malicious because Holmes knew it. So far we agree as a matter of law. But realities cannot, and are not, wholly ignored. The defendant's knowledge of the false and malicious character of the record is held to knowledge within the scope of the authority of Holmes to act for it. See Butler v. Michigan Mut. Life Ins. Co., 184 N. Y. 337, 77 N. E. 398. Except to that extent, it did not know the information was false and maliciously made a part of its records when Quinn published the information. That act was not within the scope of the authority of Holmes; and Quinn neither made nor had authority to make the record. In other words, the imputed knowledge of the defendant of the falseness of the record and the malice which actuated Holmes in making it was not the knowledge and malice of Quinn and so not the knowledge and malice of the defendant when acting by Quinn within the scope of Quinn's authority. Indeed, the same legal principle applies with equal force both in charging the defendant with malice and knowledge of falsity in so far as Holmes

acted and in putting its publication by Quinn within its qualified privilege because Quinn's freedom from malice was its own. See Corrigan v. Bobbs-Merrill Co., 228 N. Y. 58, 126 N. E. 260, 10 A. L. R. 662.

What we have said, of course, is based on the fact that Holmes was not an officer or employee of the corporation of such broad authority to act for it that it is to be charged generally with knowledge that its files contained a false record concerning the plaintiff maliciously made by Holmes. As to whether it would then have kept the record at its own risk and been liable had it permitted it to be published, we say nothing.

Judgment reversed.