HOOPER–HOLMES BUREAU, Inc.,
v. BUNN.

No. 11689.

Circuit Court of Appeals, Fifth Circuit.
April 25, 1947.

SIBLEY, Circuit Judge, dissenting in part.

———◆———

Bart A. Riley and A. C. Dressler, both of Miami, Fla., for appellant.

Dewey Knight, of Miami, Fla., for appellee.

Before SIBLEY, WALLER, and LEE, Circuit Judges.

LEE, Circuit Judge.

Appellee, plaintiff below, filed suit against appellant, defendant below, in a Florida State court for slander, based upon three mercantile reports made by the defendant on plaintiff. The defendant removed the cause to the court below. The amended complaint alleged that the defendant had maliciously published libels that brought plaintiff into occupational disrepute. On this appeal the defendant relies upon the defense of qualified privilege rather than the defense of the truth of the published matter. The court denied defendant's motion for a directed verdict both at the close of plaintiff's case and at the close of defendant's case. The jury rendered a verdict of $2,500. This appeal is from a judgment entered thereon.

The defendant is engaged in the business of making reports to insurance companies and prospective employers on the financial standing, health, character, and reputation of applicants for insurance, credit, or employment, and upon claimants under insurance policies. The defendant makes reports pursuant to a specific request from a client previously designated by its national office and delivers the report in confidence to the client. The defendant never publishes reports in any other manner.

In April, 1937, after a dispute had arisen between plaintiff and the Miami manager, plaintiff severed his employment with the Peninsular Life Insurance Company as a salesman of industrial insurance. Plaintiff testified that after his "resignation" the Prudential Life Insurance Company, the Gulf Life Insurance Company, and other companies in Miami refused him employment. He took employment outside the insurance field at less remunerative tasks. In 1938 he went to work for one I. D. Padorr as a salesman and solicitor in his photographic business.

In 1940 he applied to the Maccabees, a fraternal order writing insurance. After this application, Johnson, the Miami manager of the Maccabees, showed him a portion of a report issued by the defendant. This report recited that the plaintiff was discharged by the Peninsular Insurance Company for dishonesty. After Bunn denied the truth thereof, Johnson, upon his own recommendation, obtained employment of Bunn with the Maccabees. One Cohen, employed as an inspector in the office of the defendant in Miami had prepared this and the two subsequent reports. Shortly afterwards, Bunn tried to prove to Cohen the falsity of this first report, but Cohen replied that, because plaintiff had struck Padorr, a friend of Cohen, he would fix it so that the plaintiff would never be able to get a job so long as he lived in Miami.

On April 11, 1940, the Maccabees received a second report from the defendant, requested for the purpose of permitting the plaintiff to obtain insurance from the Maccabees. This report, in addition to the statement that the Peninsular had discharged plaintiff for dishonesty, stated that Padorr

had discharged the plaintiff for unsatisfactory service. In April, 1940, plaintiff applied to the Guaranty Life Insurance Company, at its office in Miami, for employment. The Guaranty Life requested from defendant a report on plaintiff. This report, dated April 26, 1940, and made by Cohen, in addition to the derogatory statements found in the previous two reports, stated that Bunn's services with the Maccabees were not altogether satisfactory. The Guaranty Life refused employment to plaintiff. The reason for its refusal does not appear in the record. After the refusal of Guaranty Life, Cohen told the plaintiff that as long as he applied for a job Cohen would put a bad report against him, and that "we have" instructed Johnson to get rid of him.

These three reports on plaintiff were ordered through the defendant's Miami office. The defendant claims that Cohen was one of five or six inspectors in the Miami office at the time these reports were delivered. The plaintiff contends that Cohen was the only employee of the defendant in the Miami office besides one Clark, the manager.

Cohen himself never sent out the reports directly to the clients but delivered them to Clark. Clark testified that he checked each report for content and clarity before he mailed them to the clients. Clark did not testify that he did anything to check the accuracy of the reports.

Since the jury upon conflicting evidence on the falsity of the reports necessarily found for the plaintiff and the defendant has not attacked the verdict, we may assume the falsity of the reports on this appeal.

■ The three reports made by the defendant to its two clients, the Maccabees and Guaranty Life, in regard to plaintiff's qualifications for employment and for insurance were privileged communications.[1]

Plaintiff to recover for damages caused by defamation in these privileged reports must prove the publication was made from express malice.[2]

As its first point, the defendant argues that the court below erred in refusing its motion for a directed verdict because the evidence was insufficient to show express malice on the part of the defendant. In support of this motion the defendant further argues: that the alleged malice of Cohen, who was not acting within the scope of his employment, cannot be imputed to the employer in the absence of authorization, notice, or ratification. On oral argument before this court the defendant for the first time puts a new twist to this motion: it now claims that, as a matter of law, the personal malice of Cohen cannot be imputed to the defendant irrespective of the question of scope of employment because Cohen's superior rather than Cohen himself read the report and mailed the report. In support of the motion, the defendant at the trial further contended that the only evidence attempting to prove malice on the part of the defendant is the uncorroborated testimony of the plaintiff with respect to alleged conversations with a subordinate employee of the defendant relating to past, closed transactions which were hearsay and should not have been admitted.

■ A corporation may be liable for libel by its servants.[3] The defamatory statements made by a servant speaking within the scope of his employment but with a bad motive subjects the corporation to liability.[4] The defamatory statements made by a servant only for his own purposes, although made during a transaction in which the servant is acting for the corporation, does not subject the corporation to liability.[5] A servant under a duty to gather information on the wrongful conduct of another person subjects his corporation to liability for

[1] Restatement of the Law, Torts, § 595; see Putnal v. Inman, 1918, 76 Fla. 553, 80 So. 316, 3 A.L.R. 1580; Briggs v. Brown, 1908, 55 Fla. 417, 46 So. 325.

[2] Montgomery v. Knox, 1887, 23 Fla. 595, 3 So. 211; Restatement, Torts, § 604; Briggs v. Brown, 1908, 55 Fla. 417, 46 So. 325.

[3] Restatement, Agency, § 247 and comment "b"; see Baker v. Atlantic Coast Line R. Co., 1939, 141 Fla. 184, 192 So. 606.

[4] See Restatement, Agency, § 247, Comment "c"; 14A C.J. 776, § 2848; 19 C.J.S., Corporations, § 1280.

[5] See Restatement, Agency, § 247, comment "c".

malicious statements made in connection with his employment and with a purpose to serve it.[6] An act may be done within the scope of employment although done in part to serve the purpose of the servant.[7]

Discussing the master's responsibility for torts committed by his servant, the Supreme Court of Florida, in Western Union Telegraph Co. v. Michel, 1935, 120 Fla. 511, 163 So. 86, 88, said: "The rule is well settled that the master is responsible for the torts committed by his servant in the scope or range of his employment. He is also liable for those committed in a slight deviation or departure from his business, but when the deviation or departure of the servant amounts to an abandonment of the master's business and the undertaking of an enterprise or mission of his own without the master's consent, knowledge, or approval, and having no relation to the master's business, then the master cannot be held liable for torts so committed. * * *"

The trial court correctly refused to grant defendant's motion for a directed verdict on the first ground urged. Whether Cohen was acting within the scope of his employment and whether his malice may be imputed to his employer in the absence of authorization, notice, or ratification, were jury questions. "A corporation is liable in an action for slander or other tort, although the act may have been ultra vires and foreign to the objects of its creation, and this liability extends to the tortious acts of its servants done in its service, and whether such acts were committed by the servants in the service of the corporation or solely for their own purposes, or whether the corporation authorized or participated in the tortious act are questions of fact for the jury, * * *."[8]

While the court's charge differed from our views of the law of libel, we will not overturn the judgment for that reason because the defendant has abandoned all his objections to that charge in his brief.

Of all the reported cases, Interstate Transit Lines v. Crane, 10 Cir., 1938, 100 F.2d 857, 862, comes nearest to the instant facts.[9] Plaintiff lost his job with the Burlington Transportation Company when a certain surety company refused plaintiff's application for a surety bond on account of previous claims paid by the surety company to the defendant. Gleason, one of defendant's city passenger agents, had reported certain alleged defalcations on the part of the plaintiff, previously employed as a ticket salesman under Gleason, to one Hall, defendant's auditor. Hall, without examining any of the records containing the false accusations, forwarded them to the surety company. The court held that from the failure of Gleason and another employee to investigate the reports, the jury could infer malice. The court said: "In Conrad v. Allis-Chalmers Mfg. Co., 228 Mo.App. 817, 73 S.W.2d 438, it was urged that there was no liability 'as to the corporate defendant' as 'such defendant neither knew of, authorized, or ratified the act of defendant Voorhees as its agent in writing' the letter. [Page 450.] The appellate court held against said contention as to such corporate defendant's liability as 'the act of the defendant was the act of the corporation,' the court saying: 'The corporate defendant's liability does not rest upon an express authorization of the particular act in question or upon immediate knowledge or ratification by it of such act, but upon the fact that the defendant Voorhees was acting for it in the conduct of its business within the authorized line of his employment. Under such circumstances, it not only became liable

---

[6] Restatement, Agency, § 247, comment "e".

[7] Restatement, Agency, § 236.

[8] Britt v. Howell, 1935, 208 N.C. 519, 181 S.E. 619, 620.

[9] Minter v. Bradstreet, 174 Mo. 444, 73 S.W. 668, Sup.Ct. of Mo., Div.No.2, Feb. 24, 1903, is the nearest case involving a "commercial agency." The holding of that case is not in point because the court found that the managing officers of the defendant either knew or had reason to know of the falsity of the statements reported to them by a reporter who had personal malice toward the plaintiff. In Froslee v. Lund's State Bank of Vining, 1915, 131 Minn. 435, 155 N.W. 619, the Supreme Court of Minnesota has dictum to the effect that ill feeling between the defendant's cashier and plaintiff would evidence malice in the publication of a false financial report on the plaintiff by the defendant.

for defendant Voorhees' act, but liable with Voorhees, * * *."

The Interstate Transit Lines v. Crane case effectively dispels the reliance that the defendant on the instant appeal places on the case of Solow v. General Motors Truck Co., 2 Cir., 64 F.2d 105. The Tenth Circuit in Interstate Transit Lines v. Crane said:

"In Solow v. General Motors Truck Co., 2 Cir., 64 F.2d 105, the agent who was guilty of malice was held not to be acting within the scope of his authority.

"In the instant case, Gleason had reason not only to know that the data that he furnished auditor Hall would be passed on to the Surety Company, but also in effect induced the data to be passed on."

■ Since the testimony of the plaintiff on the statements of Cohen was introduced into evidence to show the malice with which Cohen made his reports rather than to evidence any facts asserted by Cohen, the hearsay rule was inapplicable.[10] The court below correctly refused to grant defendant's motion for a directed verdict on the second reason given.

■ As its second point the defendant argues on this appeal that "the evidence completely failed to prove that Bunn's refusal of employment by insurance companies was 'procured' or 'induced' by the Bureau." The defendant who is liable for a libel actionable per se is liable for harm caused thereby to the reputation of the person defamed, or, in the absence of proof of such harm, for the harm which normally results from such defamation.[11] The plaintiff in his complaint alleged that the defendant caused six insurance companies to refuse him employment by falsely reporting to said companies the libelous matters. While the plaintiff testified that six insurance companies refused him employment, the record shows only that the Guaranty Life Insurance Company had seen one of these reports. No evidence exists as to why the Guaranty Life Insurance Company refused him employment, but the jury could have

inferred that the disparaging report was the cause of the refusal.

■ On this appeal the defendant does not contend that the trial court should have permitted it more time to obtain the deposition of Cohen. The record shows that the defendant had already obtained a postponement of the trial for four months to get the deposition of Cohen and that prior to trial it had asked for a further continuance. At the trial, however, its counsel did not press for a further continuance but asked for a charge that absence of testimony of Cohen should not be considered prejudicial to it. While the court so charged, the court said: "The fact is that plaintiff's counsel gave him all the time he was entitled to but he did not get it, so he is in a sweat-box now. He is forced to try this case without him." The granting of a continuance by the trial court is purely a discretionary matter. Since defendant does not now argue that it did not have ample time to get Cohen's testimony, and since the record shows no reason why the defendant did not have ample time to get the testimony, this court should not interfere with the trial court's refusal to grant a further continuance.

The judgment appealed from is affirmed.

SIBLEY, Circuit Judge (dissenting in part).

I think there should be a new trial. We all agree that the three reports on Bunn were privileged communications and privately made, and that there could be no recovery unless they were made both falsely and with actual malice. We agree too that the malice of the employee Cohen will make his corporate employer liable if he acted within the scope of his employment in issuing the false statements. There is no contention that any corporate officer, nor even Clark the Manager of the Miami office who employed Cohen and actually mailed out the reports, knew they were not true or had any ill will towards Bunn. Cohen was a mere investigator, who reported to Clark

[10] Wigmore on Evidence, Vol. 6, § 1790, p. 239; Vol. 2 § 396, pp. 349, 350. See Sylvester v. State, 1903, 46 Fla. 166, 35 So. 142.

[11] Briggs v. Brown, 1908, 55 Fla. 417, 46 So. 325; Piplack v. Mueller, 1929, 97 Fla. 440, 121 So. 459; Restatement, Torts, § 621.

what he found out about people on whom reports were requested. He was in the army of the United States in Europe when the case was tried, and further delay to get his evidence was denied. The defendant corporation was without evidence as to where Cohen got his information about Bunn, or as to Cohen's state of mind toward Bunn. The only evidence on that is what Bunn said Cohen said; and in my opinion it is very weak and hardly credible, but that was a jury question. I must take it that Cohen had ill-will towards Bunn. Nevertheless justice has missed its mark by the jury giving $2,500 as smart money, or punitive damages, contrary to law.

No actual damages were proven. The first report, made to the Maccabees when Bunn applied to them for employment, did no harm, for he got the employment and held it several years, and as long as he wished. The second report was also to the Maccabees when Bunn applied to them for insurance. He obtained the insurance. The third report was to Guaranty Life Insurance Company when he applied to them for a job. There is no proof at all that the report had anything to do with his not getting it, or that it was a better job than he then had with the Maccabees. There was no broadcasting of the false reports. No one ever saw them except the addressees, save that Bunn himself purloined the first from his employer's desk.

This utter lack of proof of loss of money or general repute did not, however, entitle appellant to a directed verdict, for Bunn could recover something to vindicate his right. But not $2,500 against this personally innocent corporation. The trial centered on Cohen's malice and the effect of it in making a case against the corporation. It had the effect of destroying the privilege of the communications, and rendering the corporation liable for compensatory damages, but did not make it liable for punitive damages, there being no authorization or ratification of Cohen's malicious acts. Cohen alone would be liable for punitive damages. Aetna Life Ins. Co. v. Brewer, 56 App.D.C. 283, 12 F.2d 818, 46 A.L.R. 1499; Lake Shore & M. S. R. Co. v. Prentice, 147 U.S. 101, 13 S.Ct. 261, 37 L.Ed. 97. There is nothing to the contrary in the Florida decisions.

Now the suit expressly claimed compensatory and punitive damages thrice repeated. The judge nowhere in his charge gave any instruction whatever on what damages were recoverable. The jury naturally thought both could be given if Cohen was acting in the scope of his authority. While the appellant made no request for instructions on the point, I think the failure to say anything was a fundamental fault in the charge, which has borne fruit in a verdict not justified by the law and the evidence. "It is the duty of a court, in its relation to the jury, to protect parties from unjust verdicts arising from ignorance of the rules of law and of evidence, from impulse of passion or prejudice, or from any other violation of lawful rights in the conduct of a trial. This is done by making plain to them the issues they are to try, by admitting only such evidence as is proper in such issues, and rejecting all else; by instructing them in the rules of law by which that evidence is to be examined and applied; and finally when necessary by setting aside a verdict which is unsupported by evidence or contrary to law;" Pleasants v. Fant, 22 Wall. 116, 22 L.Ed. 780. Norfolk & Western Ry. Co. v. Holbrook, 235 U.S. 625, 35 S.Ct. 143, 59 L.Ed. 392. "It is the duty of the trial judge of his own motion and without request to correctly instruct the jury as to the proper measure of damages." Burns v. Pennsylvania R. Co., 233 Pa. 304, 82 A. 246, 248, Ann.Cas.1913B, 811; 64 C. J., Trial, § 557. The motion for a new trial ought to have been granted, and discretion was abused in not granting it.